[Civ. No. 5277. First Appellate District, Division Two.—December 22, 1925.]

## GEORGE GITTELSON et al., Respondents, v. JOHN H. McKNIGHT et al., Appellants.

[1] SPECIFIC PERFORMANCE — COMMUNITY PROPERTY — HUSBAND AND WIFE — CONSENT OF WIFE — EVIDENCE—APPEAL.—Where, pending appeal from a judgment against a husband and wife decreeing specific performance of a contract for the sale of real property, the wife died intestate, the husband cannot urge on appeal that the property belonged to the community and that the wife had not signed the original offer or first escrow instructions, where there was a stipulation in court by the attorneys that the husband was the owner of the property and his testimony showed him to be the record owner, and where the wife signed the deed conveying the property to plaintiffs which was deposited with a title company and also signed a letter of instructions to said company directing it to proceed with the transaction and to pay the proceeds to her husband.

[2] ID.—DEATH OF WIFE—TITLE.—Conceding that the property was community property of the husband and his wife, upon the death of the latter her interest in the property was vested in her husband, and as her interest in the property was a mere expectancy, that expectancy was destroyed by her death, intestate, during the lifetime of her husband, and his title is now full and complete.

[3] ID.—REVENUE STAMPS—VALIDITY OF DEED.—The contract was not rendered invalid because the seller instructed the title company to affix an insufficient amount in revenue stamps, where the purchaser offered to furnish the balance of the stamps, which the revenue law provides may be done by either party, and where the deed had not been recorded or even delivered to the grantee, it being the recordation which is made unlawful without the stamps affixed.

(1) 36 Cyc., p. 573, n. 5.  (2) 31 C. J., p. 79, n. 28, 29, p. 170, n. 13.  (3) 36 Cyc., p. 789, n. 41, 42; 39 Cyc., p. 1231, n. 86.

APPEAL from a judgment of the Superior Court of Los Angeles County. Walton J. Wood, Judge. Modified and affirmed.

The facts are stated in the opinion of the court.

2.  See 5 Cal. Jur. 263; 5 R. C. L. 865.
3.  See 9 Cal. Jur. 115; 8 R. C. L. 943.

William J. O'Brien, F. J. McDougal, Glenn Behymer, J. F. Resleure and R. M. Light for Appellants.

John J. Wilson, Samuel A. Miller and Gerald F. H. Delamar for Respondents.

LANGDON, P. J.—This is an appeal by some of the defendants from a judgment in favor of plaintiffs decreeing specific performance of an agreement for the purchase and sale of real property in Los Angeles, California. The record bears out the statement of facts appearing in respondents' brief, from which we quote:

The initial negotiations were carried on between the defendant John H. McKnight for the sellers and Max Gittelson, father of the plaintiffs George, Harry, and Samuel Gittelson, in behalf of the purchasers, which negotiations finally resulted in an offer in writing by said John H. McKnight and an acceptance by said Max Gittelson; the consideration was $32,000 net to the sellers, $10,000 to be paid in cash, the balance of the purchase price to be by note secured by mortgage on the property, due in five or seven years at eight per cent interest.

On July 9, 1921, Max Gittelson, the agent, brought the purchasers, his sons, and John H. McKnight, the seller, together. Samuel Gittelson, one of the purchasers, accompanied John H. McKnight, the seller, to the office of the Title Company, where they reaffirmed the terms of the contract and signed escrow instructions to the Title Company, which was to be the custodian of the purchase money, note, deed, and other documents. These instructions were dated July 9, 1921, and by their terms the Gittelsons were to deposit $10,000 with the Title Company as a cash payment, a note for $22,500, signed by the plaintiffs, secured by a trust deed on the property, due in seven years from August 1, 1921, with interest at eight per cent per annum, payable quarterly. John H. McKnight was to deposit a deed executed by himself and Agnes W. McKnight, his wife, vesting title in the plaintiffs, purchasers, in certain undivided interests. The Title Company was to deliver the $10,000 and the note and trust deed securing the same to John H. McKnight and the deed to the purchasers "provided, within 15

days" the Title Company could issue its certificate as called for, and "in the event the conditions of this escrow have not been complied with at the expiration of the time provided for herein," the Title Company was "to complete the same at the earliest date possible hereafter," unless purchasers shall have made written demand on the company for the return of the money and instruments deposited by them. To these conditions John H. McKnight subscribed in the words "the conditions as above are hereby approved," and he instructed the Title Company to deliver the deed to the purchasers upon payment to the Title Company for his account of $10,000 "within the time as above provided."

At the time of the signing of the escrow instructions, when Samuel Gittelson was about to deposit the $10,000 called for, the escrow officer of the Title Company stated that the company did not care to have the entire $10,000 deposited at that time and suggested that Gittelson should then deposit $500 and the balance of the $10,000 and sufficient money to cover expenses when the Title Company had finished its preliminary examination and was ready to issue its certificate and should so notify Gittelson. This arrangement was agreed to by all parties and Gittelson deposited the said $500.

Subsequently John H. McKnight deposited with the Title Company, in pursuance with the contract and instructions, a deed to the property, executed and acknowledged by himself and Agnes W. McKnight, conveying the property to the purchasers in certain undivided interests, as called for in the instructions. Also, the Gittelsons deposited in the escrow a note for $22,500, secured by a trust deed on the property, due in seven years from August 1, 1921, with interest at eight per cent per annum, payable quarterly. Also, Agnes W. McKnight, wife of John H. McKnight, deposited in the escrow a paper signed by her, directing the Title Company to pay all money derived from the use of the deed she and her husband had deposited (particularly specifying that the deed conveyed the land to the Gittelsons, naming them, and stating the undivided interests vested in each, as called for in the instructions) to John H. McKnight, and further specifically instructing the Title Company in these words:

"In the event that the conditions of this escrow have not been complied with at the expiration of the time provided for herein, you are instructed to complete the same at your earliest possible date thereafter unless I shall have made written demand upon you for the return of all instruments deposited by me."

The Title Company was not ready to issue its certificate called for within the fifteen days provided in the contract and instructions, that is, was not ready so to do on July 24, 1921, but was ready seven days thereafter, to wit, on August 1, 1921. In the meantime, neither the Gittelsons nor the McKnights had in writing, or otherwise, demanded the return of anything in escrow. On August 1, 1921, the Title Company wrote Samuel Gittelson that it had completed its preliminary examination and was ready to receive the balance to be deposited, and stated that the amount of the balance was $9,667, that is $9,500 balance upon cash payment and $167 to cover expenses. This amount was promptly paid by the Gittelsons on August 2, 1921. The Title Company then had the whole $10,000 cash payment to be made under the contract, $167 for expenses, the note and trust deed securing the same, and the deed from the McKnights. For some reason not explained by the record the Title Company, instead of delivering the $10,000 note and trust deed to John H. McKnight and the deed to the Gittelsons, on said August 2, 1921, held both money and deed for fifteen days, during which time no demands had been made by either the Gittelsons or the McKnights for the return of anything deposited.

On August 17, 1921, John H. McKnight caused his attorney to write a letter to the Title Company instructing it to cancel all instructions given by him and to deliver the deed to William O'Brien, on whose letter-head the letter was written. This letter gave as the only reason for canceling his instructions and the return of the deed, that the $10,000 was not deposited with the company within the fifteen days from July 9, 1921, and not until August 2d. The Title Company notified Samuel Gittelson that it had received said letter from said McKnight, copied the contents thereof in its letter to Gittelson and refused to complete the transaction.

This action followed. The trial court decreed specific performance of the contract against John H. McKnight and

Agnes McKnight, who have appealed. Pending the appeal Agnes McKnight died and John H. McKnight, as the administrator of her estate was substituted in her place and stead as a defendant and appellant in the action.

[1]  The greatest ingenuity has been displayed by counsel in urging innumerable hypertechnical objections to the foregoing transaction. Many of the points made do not warrant serious discussion. The objections which have a semblance of merit are based upon the fact that the original transaction was between Gittelson or his agent and John H. McKnight and that Agnes W. McKnight does not appear to have signed the original offer, nor the first escrow instructions. There are numerous replies to be made to these objections, among which we might mention, first, that there was a stipulation in court by the attorneys that John H. McKnight was the owner of the property and his testimony showed him to be the record owner. He, however, later took the position that the property was community property, and conceding that it was, Agnes W. McKnight signed the deed conveying it to the Gittelsons which was deposited with the Title Company, and she also signed a letter of instructions to said Title Company, hereinbefore mentioned, directing the Title Company to proceed with the transaction and to pay the proceeds to John H. McKnight. The appellants meet these facts by urging that the escrow agreement does not constitute the contract and must be supported by a valid contract preceding it; we are saved the necessity of meeting this argument by the fact that upon the record before us Agnes W. McKnight has since died intestate. [2]  Her interest in this property, if it was community property, has vested in John H. McKnight, and with the merging of her inchoate interest in the estate of John H. McKnight disappears the last vestige of ground for this appeal.

Counsel seeks to avoid this result by urging upon this court, at great length through several briefs, his views in criticism of the case of *Roberts* v. *Wehmeyer,* 191 Cal. 601 [218 Pac. 22]. He asks this court to take a view contrary to that case and to hold that the wife's interest in community property is something larger than was decided therein. So far as this court is concerned *Roberts* v. *Wehmeyer, supra,*

must settle the law upon this question in this state. Under that case the interest of Agnes W. McKnight in the community property was a mere expectancy. That expectancy is destroyed by her death, intestate, during the lifetime of her husband, and his title is now full and complete.

Nor is there any merit in the claim that John H. McKnight holds one-half of this property in a superior equitable position with reference to this action and may urge any claims which Agnes W. McKnight might have had against the enforcement of this judgment. A reading of *Roberts* v. *Wehmeyer, supra,* is conclusive upon the fact that the wife had no separate and vested estate in any part of this property. The husband received no new estate upon her death intestate. He always was the owner of the community property, subject only to the wife's expectancy and her power of testamentary disposition; both contingencies are now removed. The husband has the same estate he had before the wife's death, freed now from the possibility of being defeated in part. He has no defense against this action for specific performance. The only reason he gave at the trial for not performing was that his wife did not want him to sell the property and while she was ill he wished to please her about the matter.

[3] It is idle to urge that the contract is invalid because the seller instructed the Title Company to affix only $10 in revenue stamps instead of $32.50 required. The purchaser has offered to furnish the balance of the stamps and the revenue law provides it may be done by either party. Furthermore, the deed in this case has never been recorded or even delivered to the grantee, and it is the recordation which is made unlawful without the stamps affixed.

The point is also made that following the specific description of the real property in the pleadings and judgment appear the words: "together with certain personal property contained therein as per inventory agreed upon by the parties herein." It is urged that there is no adequate description of the personal property at any place in the contract to enable a court to specifically perform the contract as to it. Respondents concede this and assert that the personal property is inconsequential and the provisions concerning the same may be treated as surplusage in the decree;

that the contract to convey the real property and the contract to convey the personalty may be separated.

The point is also made that the decree fails to provide for the payment over to the defendants of the consideration to be paid for the property. This is presented because it appears in the record that by stipulation between the parties the plaintiffs were permitted to withdraw, pending the trial, the $10,000 cash which they had theretofore deposited with the Title Company, without prejudice to their rights. It is fair to assume that since the trial the money has again been deposited with the Title Company in escrow and will be paid over to defendants upon delivery of the deed to plaintiffs. Furthermore, the judgment appealed from provides that the agreement of the parties be specifically performed, which, assuredly, means performed by both parties. However, the judgment of this court will protect the appellants in this matter. Accordingly, it is ordered:

That the judgment appealed from be and it hereby is modified by striking from the description of the property the following words: "together with certain personal property contained therein as per inventory agreed upon by the parties herein," and by adding to the end of the last paragraph of said decree: "and that the plaintiffs pay to the defendants $32,500 for said property in the manner and form agreed upon, to wit: $10,000 in cash and their promissory note for $22,500, payable seven years from August 1, 1921, with interest at eight per cent per annum, payable quarterly, secured by deed of trust upon said property."

As so modified the judgment is affirmed, the appellants to pay the costs upon appeal.

Sturtevant, J., and Nourse, J., concurred.

A petition by appellants to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on February 18, 1926.