[Civ. No. 13109.   First Dist., Div One.   Jan. 25, 1947.]

REGINALD H. JONAS et al., Respondents, v. HERBERT LELAND et al., Appellants.

Marcel E. Cerf, Robinson & Leland for Appellants.

Shirley, Robb & Saroyan and Dudley T. Shearer for Respondents.

WARD, J.—This is an appeal from a judgment rendered in favor of the plaintiffs in an action for specific performance against defendants Herbert Leland, Max F. Robinson Realty Company, and Max F. Robinson, an individual, doing business as Max F. Robinson Realty Company.

A Uniform Agreement of Sale and Deposit Receipt, adopted by the Real Estate Association of San Francisco, was used as the basis of a contract between the parties relative to the sale of a five-room unit and a three-room unit, known as 1740 Lyon Street. On October 5, 1943, plaintiffs deposited $500 on the purchase price.

The conditions of sale are set forth in an exhibit, "A," as follows: "Buyer to pay One Thousand Dollars ($1,000.00) IN CASH as the down payment and assume a first loan by a loaning institution in the amount of Two thousand one hundred ($2,100.00) bearing interest at the rate of six percent and payable in monthly instalments of twenty three 30/100 dollars ($23.30) monthly which is to apply on the interest and reduce the principal. Also is to assume a loan in the amount of Two thousand one hundred and fifty Dollars ($2,150.00). This loan is to bear interest at the rate of ten percent and is to be payable in monthly instalments of sixty five dollars which is to apply on the interest and reduce the principal. . . . The decision of any local title insurance company shall be accepted as final by both purchaser and seller as to all questions affecting the title and purchaser agrees to accept a title insurance policy issued by any such company

as conclusive evidence of the condition of the title. If said purchaser shall fail to comply with any conditions at the time or in the manner herein provided for, said seller shall be released from all obligations hereunder. In that event all rights hereunder, legal and equitable, of said purchaser shall cease, and said deposit shall be retained by said seller, as liquidated and agreed damages; or said seller may, if he so elects, apply said deposit on account of the purchase price of said property and enter suit against said purchaser to compel the specific performance of this contract." On the reverse side of the exhibit the following appears: "This property is now being redecorated, interior and exterior, and put in repair. The work is now in progress and the buyer may choose the color scheme they desire also have the choice of wallpaper. Samples offered them by Max F. Robinson. The cost of all repairs, reconditioning, and redecorating is to be paid by the sellers. The buyers are to close the deal when the building is ready for occupancy. . . . The buyers shall have the option of accepting the property when ready or shall have the right to refuse to accept and apply the deposit herein on another building offered by Max F. Robinson for sale." It was agreed that the buyers were to pay for linoleum, a water heater and hardwood floors. Plaintiffs placed some furniture in the premises.

The principal contention presented is that the place was not put in condition for occupancy. In this connection it is claimed that the painting of the downstairs rooms was not completed; that the water heater was not connected; that the toilets overflowed when flushed, and that there were other plumbing repairs necessary. The testimony of the seller Robinson is to the effect that the reason for the failure to close the deal was due to the plaintiffs' lack of money. The determination of the true reason is a factual matter.

Upon substantial evidence the court found "That plaintiffs, and each of them, were at all times, from and after October 5, 1943, ready and willing to perform all covenants and terms of said agreement on their part to be performed; that defendants neglected to place said premises in a condition 'ready for occupancy' under the terms of said agreement, within a reasonable time; that at all times subsequent to April 20, 1944, defendants refused and neglected to take further steps to place said premises in a condition ready for

occupancy; by reason of said refusal and neglect of defendants to have such premises in a condition ready for occupancy within a reasonable time, i. e., by April 20, 1944, plaintiffs have been deprived of the occupancy and possession of said premises, to their damage in the sum of $60.00 per month, from and after April 20, 1944. That plaintiffs are ready and willing to accept said premises in their present condition, and will at their own expense, place said premises in a condition for occupancy. That defendants, at the request of plaintiffs, did certain work on said premises including placing hardwood floors, and linoleum, in the sum of $259.99, for which plaintiffs have agreed to reimburse defendants.''

The conclusions of law are in conformity with the findings and the judgment. The judgment provides ''That the agreement . . . be specifically performed; and that the defendants, within five days from the date of this judgment deliver the sole and exclusive occupancy and possession of the premises at 1740 Lyon Street, in the city and county of San Francisco, hereinafter more particularly described, to said plaintiffs. That within ten days from the date of this judgment, plaintiffs pay to the defendant the sum of $259.99 as and for reimbursement for improvements on said premises, plus taxes on said property from the 20th day of April, 1944, and a further sum equal to any interest accrued on any outstanding indebtedness against said property since the 20th day of April, 1944, and the additional sum of $1,000 as a down payment; less, however, the sum of $60 per month for each month since April 20, 1944, being the amount of damages which the plaintiffs are hereby adjudged to be entitled to for the reasonable value of the use and occupancy of said premises for the period from and after April 20, 1944. That upon completion of the payment of the monthly installments called for in the said Agreement, namely: $23.50 per month to apply on an obligation of $2100 bearing interest at the rate of 6% per annum, said monthly payments to apply on interest and to reduce the principal; The further sum of $65 per month to apply on a loan of $2150 bearing interest at the rate of 10% to apply on the interest and principal, said interest to be computed on the balance of the principal remaining due, as reduced each month. The defendants shall, within ten days after the completion of said payments of said two loans totalling $4250, execute and deliver to the plaintiffs a good and sufficient conveyance in fee, conveying to

plaintiffs a good and marketable title to said property at 1740 Lyon Street, in the city and County of San Francisco, state of California."

About May 26, 1944, the matter was placed in the hands of the buyers' and sellers' respective attorneys. This resulted in numerous communications, setting forth divergent views on the facts and the law. The letters were carefully prepared with evident thought that litigation was imminent.

Appellants declare that no cause of action could arise based on the contract as there was no mutuality of obligation. This contention is based upon the paragraph appearing on the reverse side of exhibit "A" and heretofore quoted, which paragraph reads: "The buyers shall have the option of accepting the property when ready or shall have the right to refuse to accept and apply the deposit herein on another building offered by Max F. Robinson for sale." Appellants contend that this promise by the buyers is too indefinite to be enforceable, and therefore, since it did not impose any legal duty upon the buyer, such promise could not be determined to be a consideration for appellants' promise to sell. Appellants conclude therefore they had the right to withdraw their offer any time before its acceptance by the buyers.

In this connection, appellants cite a number of cases, none of which are definitely in point. They seek to support their argument by analogy to those cases wherein the court has held contracts for real estate brokers' commissions to be unenforceable where such contracts did not contain a definite description of the property to be sold. (*Glazer* v. *Hanson*, 98 Cal. App. 53 [276 P. 607]; *Proulx* v. *Sacramento Val. Land Co.*, 19 Cal.App. 529 [126 P. 509]; *Craig* v. *Zelian*, 137 Cal. 105 [69 P. 853]; Restatement of the Law, Contracts, p. 88, § 79.) In the Restatement it is said: "A promise or apparent promise which reserves by its terms to the promisor the privilege of alternative courses of conduct is insufficient consideration if any of these courses of conduct would be insufficient consideration if it alone were bargained for."

Appellants misinterpret the legal effect of the agreement in the present case. Their whole argument is based on the conclusion that the agreement is one for the sale of the premises in question, or, in the alternative, for the sale of another building of the sellers. There is present in this case merely an *option contract* for the purchase of the said prem-

ises. The agreement of sale and deposit receipt would have constituted a binding agreement of sale were it not for the added provisions set forth on the reverse side thereof. (*Laack* v. *Dimmick,* 95 Cal. App. 456 [273 P. 50].) As stated in *Menzel* v. *Primm,* 6 Cal.App. 204, 209 [91 P. 754]: " 'The distinction between a contract to purchase or sell real estate and an option to purchase is, that the contract to purchase or sell creates a mutual obligation on the one party to sell and on the other to purchase, while an option merely gives the right to purchase within a limited time without imposing any obligation to purchase.' "

The term of this option was to run from the date of the agreement until the premises were ready for occupancy, and the consideration for such option was the purchasers' agreement that if they did not accept the premises in question they would apply the deposit on another building offered by the sellers. Upon acceptance, the buyers would become bound by the terms and conditions set forth in the sale agreement. In other words, the buyers actually were giving their promise to buy at least some property from the sellers in consideration for the option to purchase the property in question. The option was irrevocable until the time set for its termination. As stated, the trial court found "that at all times subsequent to April 20, 1944, defendants refused and neglected to take further steps to place said premises in a condition ready for occupancy." Under such circumstances the terms of the option never expired and the attempted withdrawal by the sellers was a nullity. The contract sought to be specifically performed is the agreement of sale of the premises in question, which came into being upon acceptance of the option. It is no objection to the validity of an option contract that the holder of the option is under no obligation to exercise it. (*Smith* v. *Bangham,* 156 Cal. 359 [104 P. 689, 28 L.R.A.N.S. 522].)

There was consideration for the option given here. The buyers had the right either to accept the property when ready, or to refuse to accept in which case they had the right to have the $500 applied on another building offered by the seller. In the present case there was more than just a voluntary continuing proposal. It was rather an irrevocable offer for the term stated and therefore an option in the true sense.

The defendants next contend that the plaintiffs were not entitled to specific performance of the agreement as there

was no mutuality of remedy. In this connection they argue that since they could not have had specific performance of this contract against the buyers, then the buyers likewise cannot have specific performance against them. They also contend that, even though the buyers by bringing the present suit have made the remedy mutual, still this is immaterial where the other party to the agreement, as here, has previously withdrawn from such agreement.

In effect, all that has been said above would apply likewise to this contention. ■ Where there is an agreement to sell a certain piece of property and such agreement is signed by only one of the parties thereto, and therefore seemingly lacking in mutuality of remedy, the party who did not sign can bring a suit for specific performance and thereby make the remedy mutual. If the party who did sign has previously withdrawn from such agreement, the rule has no application. (*Nason* v. *Lingle,* 143 Cal. 363 [77 P. 71].) ■ However, this rule has no application herein, as this agreement is merely an option contract. In such case, there is never mutuality of remedy until the acceptance of the option. If the option is irrevocable there could be no valid withdrawal. (*Copple* v. *Aigeltinger,* 167 Cal. 706 [140 P. 1073] distinguishing *Nason* v. *Lingle, supra.*) Upon the acceptance of the offer by the buyer, there is then created the contract of sale, and it is this contract that gives rise to the remedy for specific performance. (*Smith* v. *Bangham, supra.*)

■ In the present case the trial court found, and the evidence supports the conclusion, that the sellers never put the premises in condition for occupancy. The bringing of this suit for specific performance by the buyers constitutes their acceptance of the option within the prescribed term thereof. (*Copple* v. *Aigeltinger, supra.*) ■ At the buyers' request, the vendors expended money for the improvements; still such improvements benefited them in the long run as they still owned the property. In such a case the reason for the application of the doctrine of estoppel is absent as the element of detriment is not clearly present.

■ The portion of the judgment giving respondents the right to deduct $60 per month for each month since April 20, 1944, being damages for the deprivation of the use of the property since that date, is not erroneous. On the reverse side of the agreement appears the following: "The property

is now being redecorated, interior and exterior, and put in repair. The work is now in progress and the buyer may choose the color scheme they desire also have the choice of wallpaper. Samples offered them by Max F. Robinson. The cost of all repairs, reconditioning, and redecorating is to be paid by the sellers.'' A promise on behalf of the vendors to make the property ready for occupancy within a reasonable time could be implied as part of the option agreement. In other words, the sellers offered the property to the buyers upon certain terms and as part of such offer they impliedly promised to have the property ready for occupancy within a reasonable time. ''Even where specific performance is granted, the court may award in addition such damages as the plaintiff is lawfully entitled to by reason of delay in performance.'' (*Abbott* v. *76 Land & Water Co.*, 161 Cal. 42 [118 P. 425]; *Coleman* v. *Dawson*, 110 Cal.App. 201 [294 P. 13].)

█ Appellants argue that the judgment made a new agreement for the parties rather than enforce the agreement as written. They point out that under the judgment they were to deliver the sole possession of the property to respondents within five days from the date of the judgment without any further payments on the purchase price, while under the agreement possession was to be delivered the day following the date of recordation of the deed, which deed was not to be delivered until the *balance* of the purchase price had been paid, and that they were to convey the property to respondents in fee within ten days after the completion of the payments of the two loans totaling $4,250. Under the agreement the buyers were to assume two loans and to give certain security for such loans. The first loan was to be from a lending institution, and the second from the sellers. The court by its judgment changed the terms of the agreement from providing for personal loans, with the property as security, to just a contract for installment payments, with the seller retaining the title as security.

Equity enforces performance of a contract only as it is made; a court has no power to make a new contract. Appellants are entitled to have the judgment modified so as to correspond with their agreement. (*Gittelson* v. *McKnight,* 75 Cal.App. 698, 704 [243 P. 889].) The trial court is directed to modify the findings and judgment as herein indicated. As so modified the judgment will stand as affirmed. On this appeal each side will pay its own costs.

Peters, P. J., and Schottky, J. pro tem. concurred.

Appellants' petition for a hearing by the Supreme Court was denied March 24, 1947.