[Civ. No. 21961.   Second Dist., Div. One.   Apr. 1, 1957.]

JOHN CARAS et al., Respondents, v. JAMES E. PARKER et al., Defendants; LEON GOLDBERG et al., Appellants.

Low & Stone and Sheldon Berlin for Appellants.

Tanner, Thornton & Myers for Respondents.

FOURT, J.—This is an appeal by defendants Leon and Fannie Goldberg, from a judgment ordering them to convey certain real property to plaintiffs, in an action for specific performance of a contract of sale.

A résumé of the pertinent facts of the case is as follows: Defendant James E. Parker was the owner of two lots in the city of Manhattan Beach. Parker agreed, on February 27, 1952, to sell this property to plaintiffs for the sum of $3,900. A six months escrow was entered into by plaintiffs and Parker at the Security-First National Bank of Los Angeles, El Segundo Branch, with the bank as the escrow agent.

In that part of the escrow instructions executed by plaintiffs as "Buyer," and at the end of the printed matter on the first page, the following appears in typewriting: "This escrow is contingent upon Buyer securing approval of city of Manhattan Beach of property described above to be divided into eight lots." There was uncontradicted testimony that this provision was inserted at the buyer's request. The instructions signed by Parker as "Seller," authorized the escrow agent to deliver the deed when there was deposited in the

escrow for his account the sum of $3,900, and Parker approved and agreed to be bound by the buyers' instructions.

An initial payment of $200 was made by plaintiffs to the broker, Hackius, who deposited it in the escrow on February 28, 1952. On August 11, 1952, there was a deposit in the escrow of $1,995.50, made in the form of a check of Dee B. Tanner, one of the attorneys herein for plaintiffs, and a deposit of $1,775.50, made in the form of a check of plaintiffs on the same day, or a total of $3,911, deposited in the escrow. A deed executed by Parker to plaintiffs, dated February 27, 1952, was deposited in the escrow. At the time the final monies were deposited, the escrow agent was requested by plaintiffs to modify the instructions to provide that "Title would vest in John Caras, a married man, an undivided one-half interest, and Dee B. Tanner, a married man, an undivided one-half interest."

Sometime about April, 1952, defendants Leon and Fannie Goldberg, husband and wife, hereinafter referred to as the Goldbergs, with information and knowledge of the escrow and of the agreement between Parker and plaintiffs, went to the latter and offered them $1,000, profit if they would, in effect, let the Goldbergs buy the property in question. This offer was refused by plaintiffs.

On April 23, 1952, Parker wrote a letter to the escrow holder wherein he repudiated the agreement. He wrote: "Please cancel Escrow #351408 as it serves no practical purpose since it is for 6 mos duration & I have no time to close my affairs before I reenter service.

"Mr. Hackius promised action in 30 days after escrow date & has failed to keep his promise. This leaves me with no time & consequently no further benefits to be gained."

The Goldbergs then purchased the property from Parker. An escrow was set up in the Inglewood Escrow Company on May 8, 1952, between Parker and the Goldbergs, and a deposit of $100 was made and the escrow was closed on July 9, 1952, the price being $5,800. On the latter date the deed was recorded from Parker to Goldberg.

A complaint was filed by plaintiffs on September 10, 1952, at which time they did not know that Parker had sold the property to the Goldbergs. Upon learning of the latter sale, and the facts and circumstances surrounding it, plaintiffs promptly filed an amended complaint on November 25, 1952, wherein it was alleged that the Goldbergs' purchase from Parker was with full knowledge of plaintiffs' contract, and

that the Goldbergs conspired with Parker to breach the contract and convey the property to them, instead of to plaintiffs.

There was a motion by the Goldbergs for a judgment on the pleadings, which was granted, and upon appeal that judgment was reversed (*Caras* v. *Parker*, 131 Cal.App.2d 141), the court stating, at page 142 [280 P.2d 226] : "If the facts alleged can be proved, plaintiffs are entitled to specific performance of their contract as against them all."

Plaintiffs alleged in their complaint the performance of all the conditions to be performed by them, and the answer of the Goldbergs denied the same.

At the trial, appellants made an offer of proof to the effect that plaintiffs had never fulfilled the condition set forth in the escrow in that the approval of the city of Manhattan Beach had never been obtained for the division of the property into eight lots and that there had been no waiver of that condition. The offer of proof was denied.

The court found that plaintiffs had fully performed all of the conditions of the agreement required to be performed by them, and that since August 11, 1952, they have been entitled to have the property conveyed to them. It was also found that Parker's attempted cancellation of the escrow was without right and a breach of the contract. Further, the facts were found to be substantially the same as the facts heretofore related. The court then gave judgment to the plaintiffs, wherein the Goldbergs were ordered to convey the property to plaintiffs by a deed, plus costs of suit.

As grounds for reversal appellants contend that (1) there is no evidence to support the finding that plaintiffs performed all of the conditions of the agreement required to be performed by them; (2) there is a material variance between plaintiffs' pleading of performance and claim of waiver at the trial; (3) there was no specifically enforceable right against appellants since the contract lacked mutuality of obligation and remedy; (4) the attorney who acquired a one-half interest in the property and the litigation should be brought in as a real party in interest and (5) a specific judgment against respondents, without awarding them compensation or restitution and settling all the rights of all parties to the property is inequitable.

These contentions are without merit. The condition or contingency in question makes it apparent that the agreement between plaintiffs and Parker was an option contract

and not a contract of sale. Plaintiffs had six months in which they could attempt to secure the approval of the city to divide the property into eight lots and pay the balance of the purchase price. They were under no obligation to do either. ■ As stated in *Menzel* v. *Primm*, 6 Cal.App. 204, 209 [91 P. 754] : " 'The distinction between a contract to purchase or sell real estate and an option to purchase is, that the contract to purchase or sell creates a mutual obligation on the one party to sell and on the other to purchase, while an option merely gives the right to purchase within a limited time without imposing any obligation to purchase.' (29 Am. & Eng. Ency. of Law, 2d ed., p. 606.) ■ In other words, an option is a contract by which the owner of property invests another with the exclusive right to purchase said property at a stipulated sum within a limited or reasonable time in the future. ■ Or, stated in another form, it is a right 'acquired by contract to accept or reject a present offer, within a limited or reasonable time in the future.' (21 Am. & Eng. Ency. of Law, p. 924.) When the offer thus made is, within the time stipulated, accepted by any sufficient act or words of the party acquiring the right to accept or reject such offer, the transaction between the parties, *ipso facto*, ceases to be an option, but becomes a sale or contract of sale according to the circumstances of the acceptance.' "

■ An option founded upon a valuable consideration cannot be withdrawn or revoked within the time fixed, and it will be binding and obligatory upon the optionor, or his assigns with notice, until it expires by its own limitation. (*Braselton* v. *Vokal*, 53 Cal.App. 582, 586 [200 P. 670]; *Dawson* v. *Goff*, 43 Cal.2d 310, 316, 317 [273 P.2d 1]; *Jonas* v. *Leland*, 77 Cal.App.2d 770, 777 [176 P.2d 764]; *Copple* v. *Aigeltinger*, 167 Cal. 706, 710 [140 P. 1073].)

■ Since an option agreement supported by consideration is an enforceable contract, notwithstanding its unilateral character, it is a sufficient foundation for the escrow of a deed to the property for the purchase of which the option was given. (*Feisthamel* v. *Campbell*, 55 Cal.App. 774, 779 [205 P. 25].)

Parker deposited in the escrow a deed to the property, executed by him to plaintiffs, which he authorized the escrow agent to deliver when he held in the escrow, for the account of Parker, the sum of $3,900. ■ Escrow instructions signed by both parties, where they constitute all the necessary elements of a contract, may be regarded as the written

contract of the parties. (*White* v. *Reskin,* 90 Cal.App. 512, 517 [265 P. 1016] ; *Brown* v. *Roberts,* 121 Cal.App. 654, 658 [9 P.2d 517] ; *Williams* v. *Rush,* 134 Cal.App. 554, 558 [25 P.2d 888].) The agreement being in writing, consideration is presumed. (Civ. Code, § 1614; Code Civ. Proc., § 1963, subd. 39.)

As stated in *Warner Bros. Pictures, Inc.* v. *Brodel,* 31 Cal.2d 766, at page 773 [192 P.2d 949, 3 A.L.R.2d 691], "The creation of the final contract requires no promise or other action by the optionor, for the contract is completed by the acceptance of the irrevocable offer of the optionor by the optionee. 'The contract has already been made, as far as the optionor is concerned, but is subject to conditions which are removed by the acceptance.' (*Seeburg* v. *El Royale Corp.,* 54 Cal.App.2d 1, 4 [128 P.2d 362] ; see *Erickson* v. *Boothe,* 79 Cal.App.2d 266, 272 [179 P.2d 611].) Thus the option contract gives the optionee a right against the optionor for performance of the contract to which the option relates upon the exercise of the option, which the optionor cannot defeat by repudiating the option. (See McGovney, *Irrevocable Offers,* 27 Harv.L.Rev. 644, 646, 654, and cases collected in footnote, 5, p. 646; Corbin, *Option Contracts,* 23 Yale L. J. 641, 656.) Since the optionor promises to perform the contract to which the option relates, subject to a condition at the discretion of the optionee, an option contract involves on the part of the optionor a unilateral promise to perform the obligations of the contract to which the option relates. (Citing cases.)''

In an option contract for the purchase of real property there is no mutuality of remedy until the acceptance of the option. Upon the acceptance of the offer by the buyer, there is then created the contract of sale and it is this contract which gives rise to the remedy for specific performance. (*Jonas* v. *Leland, supra,* 77 Cal.App.2d 770, 777.) Therefore, by depositing the balance of the purchase price plaintiffs waived the contingency and accepted the offer, thus creating a contract of sale.

At the first trial it developed that Dee B. Tanner, one of the attorneys for plaintiffs, had deposited in the escrow one-half of the purchase money and had plaintiffs request a change in the escrow instructions at the bank to provide that the deed to be executed by Parker would show Tanner as the owner of a one-half interest therein. A timely motion was made wherein it was contended that Tanner

was a real party in interest and that he was not joined as a party to the action. This motion was denied.

The record of the first trial, which is in evidence herein, discloses the following:

"Mr. Tanner: I will clear this up, if you would like me to, your Honor.

.  .  .  .  .  .  .  .  .  .  .  .  .  .

"Mr. Tanner: There was a contract employing me as the attorney for Mr. John Caras and his wife, and under the terms of that contract I agreed that I would entertain and proceed in the prosecution of their lawsuit for specific performance of this property against Mr. Parker.

"At the time we first started to file this action under this contract, I agreed and they agreed with me that if we were successful in obtaining this property that as compensation for my services they would give me one-half of this property if I paid them half of what they paid for it, and that was our agreement.

"Then we advised the escrow there at the bank to that effect and I did put up half of the money at that time.

"Then I later wrote a letter to the bank on September the 9th as follows:

" 'Mrs. Green, Escrow Department, re Escrow 35-1408.

" 'Gentlemen:

" 'Enclosed is a copy of the complaint that will be filed Wednesday, September 10, 1952. Also this is to advise you that if the seller, Mr. Parker, will revoke his direction to you cancelling this escrow agreement under date of April 23, 1952, but still refuses to sign additional escrow instructions allowing title to come to myself and Mr. Caras, then in that event it will be agreeable to me that we use the deed he has already executed and which you hold in escrow and open a second escrow there at the bank allowing these buyers, Mr. and Mrs. Caras, to convery to me a one-half interest in this property under a second escrow.

" 'I want you to know this in the event that Mr. Parker revokes his cancellation letter of April 23 but refuses to sign the new escrow modification direction prepared since my deposit in escrow.

" 'Yours very truly, Dee B. Tanner.'

.  .  .  .  .  .  .  .  .  .  .  .  .  .

"The Court: This comes pretty close to being champerty."

A recess was taken and counsel went into the judge's chambers. Shortly thereafter, in open court, Tanner stated:

"MR. TANNER: Yes, your Honor. In view of the contract interest I have with my client, I intend to withdraw as the attorney and I will have another attorney, my partner, continue with this case, or other counsel that I can obtain for my clients, subject, of course, to their consent.

"I wish to state for the record that I have no interest whatever against the defendants in this case personally or their attorneys by reason of my contract to render services to my clients, the Carases.

"THE COURT: In addition to that, you waive any rights that you may have to contend that you are a necessary or proper party to this action?

"MR. TANNER: Yes, I will stipulate that I am not such a party.

"THE COURT: Does counsel accept the stipulation?

"MR. STONE: It is acceptable to the defendants Leon Goldberg and Fannie Goldberg.

"MR. COWITT: It is acceptable to the defendant Parker."

Appellants contend they were entitled to have Tanner included as a party so that a defense based upon the Business and Professions Code, section 6129,[1] could have been advanced; that such conduct violates the spirit if not the word of that section; and that a decree awarding the property to plaintiffs alone does not protect appellants against some future claim by the attorney.

There is no evidence that Tanner had purchased or secured the one-half interest in the transaction with the intention of bringing suit, and furthermore, there is no showing of a solicitation by Tanner. Quite the contrary appears, and we will not presume any criminal intent or purpose.

The trial court properly denied appellants' motion. Tanner was not a party to the contract which was the subject of the action. Although plaintiffs requested a change in the escrow instructions, such change was never accepted by Parker. Caras was the real party in interest and no issue to the contrary was raised by the pleadings. Moreover, appellants at the first trial stipulated that Tanner was not a necessary party.

---

[1]Section 6129, Business and Professions Code, reads:
"Every attorney who, either directly or indirectly, buys or is interested in buying any evidence of debt or thing in action, with intent to bring suit thereon, is guilty of a misdemeanor."

Appellants complain that the decree, as presently drawn, leaves plaintiffs with the property, Parker with $5,800, and appellants with an inequitable result. A quick answer to that complaint is that appellants brought the trouble onto themselves. They knew there was an agreement between Parker and plaintiffs; they attempted to buy out plaintiffs for $1,000, and when they found they could not do so, went to Parker and offered him $2,000 more than plaintiffs had agreed to pay. In other words, appellants were the driving force to induce Parker to breach his agreement and but for their conduct, so far as the record before us discloses, there would have been no breach. Furthermore, appellants should have cross-complained and joined Parker if they had desired to adjudicate their rights as against Parker.

Judgment affirmed.

White, P. J., and Doran, J., concurred.

A petition for a rehearing was denied April 23, 1957, and appellants' petition for a hearing by the Supreme Court was denied May 29, 1957. Schauer, J., was of the opinion that the petition should be granted.