BALTHIS, J.
 

 Plaintiff was the owner and lessor of certain improved real property upon which a bowling alley and restaurant were located. The lease in question was executed May 10, 1954, between plaintiff and certain of the defendants. By assignments and guarantees the remaining defendants became parties to and obligated to comply with its terms. The monthly rental was $2,780 and the total in dispute was $6,950, covering the months of August and September and the first half of October 1959. In defense of their failure to pay this rent defendants contended that documents dated July 17, 1959, and August 12, 1959, hereinafter referred to in detail, excused such payment.
 

 Pursuant to the lease defendants had in 1954 taken possession of the property and had paid the monthly rental to and
 
 *707
 
 including the last day of July 1959 and it was agreed that defendants occupied the premises and operated the business located therein from August 1, 1959, to October 15, 1959, without paying any further rent. It was further conceded that on July 17, 1959, without benefit of counsel the parties signed a “home-made” document. This agreement gave plaintiff the right to purchase from defendants the going bowling alley and restaurant business and certain personal property used in connection with it for the total sum of $212,000. Paragraph 5 provided:
 

 “5. Dr. Bollinger shall comply with these terms no later than the 15th day of August 1959; however, he may exercise his privilege sooner should he desire. It is also to be noted that the operators of San Gabriel Lanes will not pay any more rent unless this offer is refused in writing by Dr. Bollinger whether he elects to purchase or not. Should he elect to purchase then the operators and sellers of San Gabriel Lanes will not be required to pay any more rent.”
 

 On August 5, 1959, defendants entered into an escrow with one David Boran wherein defendants agreed to sell and Boran agreed to buy the interests owned by defendants, including all the personal property used in the operation of the bowling alley and restaurant. Plaintiff, although holding the option, participated and consented to this sale to Boran but plaintiff was not a party to such escrow. On August 10, 1959, certain supplemental instructions were signed by the parties (and approved by plaintiff) which included the following:
 

 “You are further instructed in your above escrow that the escrow instructions are subject to that certain option between sellers herein and Dr. Bollinger. If this sale is consummated and this escrow closes the said option is cancelled.”
 

 It was stipulated at the trial that subsequently the escrow between defendants and Boran was consummated.
 

 On August 7, 1959, plaintiff entered into a separate escrow with Boran whereby plaintiff agreed to sell and Boran agreed to purchase plaintiff’s interest in the real property leased to defendants.
 

 On August 12, 1959, plaintiff wrote a letter to defendants which included the following paragraph:
 

 “This is to inform you that pursuant to the agreement between us of July 17, 1959, that if David Boran does not complete his escrow for the purchase of the San Gabriel Lanes which has been opened at the Alberta Fabrick Escrow
 
 *708
 
 Company, I intend to purchase the Lanes upon the same terms and conditions as our agreement of July 17, 1959.”
 

 The case was tried without a jury and the court made its finding and rendered judgment for defendants. Plaintiff appeals from the judgment.
 

 Plaintiff makes the following arguments on appeal:
 

 (1) The trial court erred in construing the legal effect of the documents and the evidence, and there was no real defense to plaintiff’s action for rent under the lease while the property was occupied by defendants until October 15, 1959; therefore judgment as a matter of law should have been rendered for plaintiff.
 

 (2) The trial court prejudicially erred in limiting cross-examination of certain defendants.
 

 (3) The trial court erred in not admitting extrinsic evidence in aid of interpreting paragraph 5 of the agreement of July 17, 1959.
 

 An examination of the agreement of July 17, 1959, containing paragraph 5 above quoted indicates that it is, and was intended by the parties to be, an option agreement giving plaintiff the privilege of purchasing defendants’ property (the personal property and going business). An option has been defined as being ‘‘a contract by which the owner of property invests another with the exclusive right to purchase said property at a stipulated sum within a limited or reasonable time in the future.”
 
 (Caras
 
 v.
 
 Parker,
 
 149 Cal.App.2d 621, 626 [309 P.2d 104].)
 

 A fair and reasonable analysis of the agreement, particularly paragraph 5, establishes that the consideration for the giving of the option by defendants to plaintiff was the release of defendants’ obligation to pay rent until and unless plaintiff gave written notice of his rejection of the offer or option. In other words, while the option was effective and outstanding, defendants were not obligated to pay rent.
 

 Plaintiff knew of the proposed sale to Boran when he obtained the option from defendants on July 17. He subsequently (August 7) entered into escrow with Boran for the sale of his real property (covered by the lease) and also consented (August 5) to the sale of defendants’ interests to Boran.
 

 However, at no time did plaintiff give written notice to defendants of any election to either accept or reject the option offer. To. the contrary plaintiff .acted to keep the option offer alive against the possibility that the Boran escrow would
 
 *709
 
 not be consummated. In plaintiff’s letter to defendants of August 12 plaintiff makes this quite clear by saying: “If David Boran does not complete his escrow for the purchase of the [bowling alley] ... I intend to purchase [the bowling alley] upon the same terms and conditions as our agreement of July 17, 1959.” Thus, plaintiff himself kept the option alive and the price specified for the giving of the option was the “no rent” provision.
 

 Plaintiff argues that the supplemental instructions in the escrow between defendants and Boran, approved by plaintiff, which provided that if the sale to Boran was consummated and the escrow closed “the said option is cancelled,” changes the situation and removes defendants ’ defense against the claim for rent. Plaintiff contends, in effect, that as the escrow was consummated the option agreement (of July 17, 1959) was thereby cancelled and the very agreement upon which defendants rely can no longer be considered or given effect.
 

 This argument of plaintiff, while ingenious, cannot be accepted.
 

 The option agreement of July 17, 1959, was in effect (and gave plaintiff certain rights) during all of the period from July 17 until the close of the defendants-Boran escrow in October or November. The consideration for the giving of the option (the no-rent clause) was earned because of the existence and effectiveness of valuable' rights given to plaintiff during all of this period. The reference to the sentence in the supplemental instructions that if the sale is consummated and the escrow closes the “option is cancelled” only means that it is thereby extinguished and is no longer effective. It does not, and could not reasonably, have the effect of making the option agreement, and the paragraph providing for the consideration therefor, void
 
 ab initio.
 

 We hold the findings and conclusions of the trial court that the provisions of paragraph 5 of the July 17, 1959, option agreement had the legal effect of excusing any payment of rent by defendants during the specified period are supported by the evidence and are legally correct.
 

 Plaintiff called one of the defendants under section 2055, Code of Civil Procedure, and asked him whether there was any preliminary discussion regarding paragraph 2 of the agreement of July 17 (dealing with the inventory of food and liquor in the restaurant), prior to the signing of the document. The trial judge stated that he felt this was not ma
 
 *710
 
 terial or related to paragraph 5 dealing with the obligation to pay rent and he then asked counsel for plaintiff for an offer of proof. Counsel said he was unable to make an offer of proof but stated what he considered were the grounds of relevancy. The trial judge then held such matters were immaterial and irrelevant to the issue involved, the obligation of defendants to pay rent under paragraph 5 of the agreement, and sustained objections to this line of questioning. Plaintiff contends he was prejudicially limited in cross-examination of one of the defendants.
 

 We think the questions of relevancy and materiality were for the trial court to determine. In
 
 Daggett
 
 v.
 
 Atchison T. & S. F. Ry. Co.,
 
 48 Cal.2d 655, 663 [313 P.2d 557], the rule as to cross-examination of a witness is stated as follows: “The extent to which cross-examination of a witness may be carried rests, of course, largely within the discretion of the trial court and the same rule applies to a witness examined under [Code Civ. Proc.] section
 
 2055.”
 

 Plaintiff also complains that he was restricted in his cross-examination of another defendant witness when he asked him whether he had stated to other defendants the
 
 purpose
 
 of another document referred to above, the supplemental escrow instructions dated August 10. There was no issue about the document having been signed nor as to its contents; it was before the court as evidence. Here again the court questioned the relevancy of the question and twice asked for an offer of proof. Counsel’s answer was:
 

 “Mr. Laidig : All I want to get from this witness is that they agreed that the document, or they said that the document meant what it said.
 

 “The Court: Objection sustained.”
 

 We find no error here because it is not shown how the questions asked would establish any relevant or material evidence. While wide latitude is given to counsel on cross-examination, materiality and relevancy must be indicated. Generally the extent of cross-examination is a matter over which the trial court is given discretion. As is said in
 
 Sullivan
 
 v.
 
 Dunnigan,
 
 171 Cal.App.2d 662, 670 [341 P.2d 404]: “A trial court has a clear duty to supervise the conduct of the trial to the end that it may not be unduly protracted and that other litigants too may have their day in court. In carrying out this duty the court may confine cross-examination within reasonable limits and may curtail cross-examination which relates to matters already covered, or which
 
 *711
 
 are irrelevant. These are matters clearly within the court’s discretion and only a manifest abuse thereof will require a reversal.”
 

 On the question of whether the evidence sought by the cross-examination is material, the comment is made in 1 Stan-bury, California Trial and Appellate Practice (§432) as follows: ‘1 Obviously it is not error merely to sustain an objection to a question during cross-examination. There is no error unless the inquiry foreclosed appears to be material. Unless the question itself reveals its purpose the cross-examiner must state what he is after before he can assign error in the ruling. . . . Many opinions refer to the absence of offers of proof as if they were required, and the record should always show what the purpose of the question was.”
 

 In the case at bench we find no error when the trial judge suggested to plaintiff’s counsel that an offer of proof be made as to the evidence to be sought from the questions as to which objections were made. These matters relating to inventory, operating profits and the purpose of the supplemental escrow instructions (which were before the court) all appear to be irrelevant and immaterial to the matter of rent alleged to be due plaintiff and for which the action was brought. Plaintiff contends that the obligation to pay rent was tied in with the right to the profits from the operation of the business; that if defendants had the profits from operations during the period mentioned they could not also claim nonliability for payment of rent under the lease. However, this right to operating profits was not mentioned in the agreement of July 17 nor in any of the documents introduced into evidence. Further, it was not made an issue by the pleadings or the pretrial order. In view of such record, it is difficult to see how it could become a determinative issue in this action which was for rent due under the lease.
 

 The final contention of plaintiff is that the trial court erred in holding paragraph 5 of the July 17 agreement unambiguous and in sustaining objections to questions pertaining to the intent and meaning of the paragraph and the interpretation placed thereon by the parties.
 

 Paragraph 5, as previously analyzed herein, states the consideration to be paid by plaintiff (the release of the rent obligation) for the option privilege accorded him. No provision is made about the operating profits from the business, and parol evidence is not admissible to add another term to the contract. In
 
 Hotchkiss
 
 v.
 
 Nelson R. Thomas Agency,
 
 
 *712
 
 96 Cal.App.2d 154, 157-158 [214 P.2d 568], the court states the rule: “In the absence of an ambiguity the general rule is that the terms of a written agreement cannot be varied or changed or modified or even explained by parol testimony .... Parol evidence cannot be admitted to add another term to an agreement even if the writing contains nothing relating to the particular provision to which the parol evidence is directed.” (And see
 
 California
 
 Jewelry
 
 Co.
 
 v.
 
 Provident Loan Assn.,
 
 6 Cal.App.2d 506, 512 [45 P.2d 271].)
 

 Plaintiff’s argument upon appeal seems to be based upon
 
 the
 
 proposition that since he was unable to close the escrow for the purchase of defendants’ interests on or prior to August 15, 1959, he is entitled to claim rent for the entire period from August 1 to October 15, 1959. This is not the import of the language of the July 17 agreement. A fair and reasonable interpretation of paragraph 5 of that agreement is that until plaintiff gave written notice of definite action upon the offer contained in the option agreement, defendants were excused from the further payment of rent. As plaintiff kept the option alive and effective until the escrow was closed which was after defendants had vacated the property on October 15, 1959, defendants were not under any liability to pay rent.
 

 The judgment is affirmed.
 

 Burke, P. J., and Jefferson, J., concurred.