238 P.2d 957

**STATE v. HARRIS.**

No. 1019.

Supreme Court of Arizona.

Dec. 10, 1951.

Fred O. Wilson, Atty. Gen., and Charles Rogers, Asst. Atty. Gen., for appellee.

J. Frank Gibson, of Phoenix, for appellant.

UDALL, Chief Justice.

Willie Harris was convicted of the crime of grand theft and sentenced to serve not less than two nor more than five years in the state prison. After his motion for a new trial was overruled, he prosecuted this appeal from the denial of the motion and from the judgment and sentence rendered against him.

The defendant and Sammy Smith were jointly charged by the information of unlawfully and feloniously taking 35 cartons of cigarettes, three cases of pepper and three cases of coffee, of the total value of $132.16, which was alleged to be the personal property of Walter Ong. Sammy Smith was acquitted by the jury.

Walter Ong was the owner of Central Market No. 2, located at 1602 E. Thomas Road, Phoenix, Arizona and had employed the defendant for three years previously as a janitor and handy man. Ong had been missing merchandise from time to time from the store and had reported it to Fred

Nichols, a detective of the Phoenix Police Department. On Sunday morning, November 12, 1950, Nichols concealed himself behind a service station near the store for the purpose of watching the premises. He saw the defendant arrive around 8 a. m. and a few minutes later Sammy Smith drove up in his car.

The defendant went to the market as was his usual practice on Sunday mornings to clean the premises, and it appears that immediately after arriving there he telephoned Sammy Smith asking him to bring his car and make a delivery. Upon Smith's arrival the defendant rolled a pushcart out containing three cases of pepper, and three cases of coffee which he started to put in the car. Sammy Smith remained in the car and gave the defendant no physical assistance. Before the defendant had finished loading the car Detective Nichols appeared and placed them under arrest. He took both the defendant and Sammy Smith inside the store and telephoned Walter Ong, requesting that he come to the store. Upon his arrival Ong informed the officer that he had not given either Willie Harris or Sammy Smith permission to sell or remove merchandise from the store.

The defendant makes nine assignments of error which can be divided into two main categories. The first four have to do with the court's refusal to give certain instructions submitted by the defense, and the last five complain of the court's sustaining objections interposed by the state to certain lines of testimony proffered by defendant.

■ The theory of the defense is best shown by the following colloquy between the court and defendant's attorney:

"The Court: 'You think the rule is that if a man works for an employer, and he thinks he is not being paid enough, that he has a right to go to the till and pay himself out of that, even though he knows that the employer doesn't intend to pay. him, and that would excuse him of any felonious intent of robbing the till?'

"Mr. Haislip: 'I think it would; that is, if he went and took the money out of the cash register especially to pay himself for some work that was done outside of the work in the store, I think it would excuse him of felonious intent.'"

The defendant attempts to show that an essential element of theft was absent, i. e., felonious intent, by making the following offer of evidence which was denied: " * * * we purpose to show that this employer of the defendant Willie Harris is engaged in extensive gambling activities here in this community and was so engaged at the time prior to November 12th, 1950; that he had had this defendant Willie Harris working after hours in doing work in fixing gambling equipment for him outside of the store and away from the store, and that the defendant Willie Harris understood that he

thought that he was entitled to compensation, and that he never received any compensation, and that he was of the opinion when he took this merchandise that he had a right to take it to an extent that would reasonably compensate him for his services. That is offered for the purpose of showing the absence of felonious intent, * * * "

In support of this proposition defendant directs our attention among others to Hurley v. State, 22 Ariz. 211, 196 P. 159, and Bauer v. State of Arizona, 45 Ariz. 358, 43 P.2d 203, 205. In the latter case the general rule is stated: " * * * a charge of robbery fails where the attempt is to collect a bona fide debt, since, to constitute that offense, there must be an anumus furandi and this cannot exist *if the person takes the property under a bona fide claim of right, * * *."* (Emp. sup.) We agree with the rule but are unable, as was the trial court, to see how it is applicable to the facts in the instant case.

Also it is clear that the defendant did not consider that he was justified in taking the property for when Detective Nichols at the time of making the arrest, asked what they were doing, the defendant explained that he was making a delivery for his employer, Ong. Then later when confronted by Ong who informed Nichols that he had not given either defendant or Sammy Smith permission to sell or remove any merchandise, the defendant said, "Well, I guess you have got me." The next day after the arrest, the defendant in the Detective Bureau at police headquarters admitted taking about $1900 worth of merchandise over a period of about a year and selling it on the "black market".

The assignments of error relative to the court's refusal to give certain proffered instructions do not justify our extending the opinion by setting them out haec verba. Suffice it to say that all of these rejected instructions were objectionable as: being a comment on the evidence; matters already covered by other instructions; or predicated upon the erroneous theory properly rejected by the trial court, that the defendant was only taking the property for the purpose of paying himself for outside work. In other words, none of these four instructions correctly stated the law as applied to the facts actually admitted in evidence in the case and hence it was not error to refuse them.

The defendant specifically wanted to show by cross-examination of Ong that he "was one of the lowest down rascals that there is in the community", that he was engaged in extensive gambling activities and in illegal traffic of drugs here in the city of Phoenix, that he was beating the federal government out of income taxes, and was endeavoring to "shake down" an insurance company. All of this it was asserted was for the purpose of attacking the credibility of the witness. However, counsel would not avow that Ong had been convicted of these alleged misdeeds.

■ All courts hold that if a witness has been convicted of a felonious crime it is admissible to affect his credibility. Hadley v. State, 25 Ariz. 23, 212 P. 458; Midkiff v. State, 29 Ariz. 523, 243 P. 601; 3 Wigmore Evidence 538, § 980 (3d ed. 1940). In the majority of jurisdictions only veracity character is admissible to impeach a witness and evidence of bad general character not affecting veracity is inadmissible. 3 Wigmore Evidence 447, 450, §§ 922 and 923 (3d ed. 1940). The majority of courts will allow on the cross-examination of the witness, specific acts of misconduct not sustained by a conviction to be shown which affect veracity. 3 Wigmore Evidence 550, § 983 (3d ed. 1940). But this court has allied Arizona with the minority of states by holding that on cross-examination specific acts of misconduct cannot be shown unless the witness has been convicted of that crime. In other words a mere accusation of a felonious crime is not admissible unless there has been a conviction. Arizona v. Peters, 60 Ariz. 102, 131 P.2d 814; Bell v. State, 131 Tex.Cr.R. 571, 101 S.W.2d 558; Commonwealth v. Petrillo, 341 Pa. 209, 19 A.2d 288; People v. Buyle, 22 Cal. App.2d 143, 70 P.2d 955; Warren v. Hynes, 4 Wash.2d 128, 102 P.2d 691. For an excellent discussion of this question see "Character Proof in the Law of Evidence" by Morris K. Udall, Vol. 18 U. of Cin.L. Rev. 283 (May 1949).

■ This was an attempt on the part of the defendant to impeach Walter Ong on a mere accusation of crime. This is clearly inadmissible under the Arizona rule stated above. The reason given by the courts for this limitation is that this is a collateral matter and if allowed it would be time-consuming and a confusion of the issues. Another good reason is the protection of the witness. He should not be expected to come prepared to defend every incident of his past life but only to meet those felonious acts of which he has been convicted. If a witness knew that he would have all his alleged misdeeds made public and be open to false accusations as to others, from which he would not be permitted to defend or explain, he would dread the witness box and be reluctant to appear and give testimony freely.

Furthermore if the defendant had been allowed to cross-examine Ong on these alleged misdeeds and Ong had denied them, his answers would have been conclusive as this was collateral matter and the court would not allow the defendant to consume its time to contradict him. 3 Wigmore Evidence 661, § 1005 (a), (3d ed. 1940).

We hold that the trial court did not commit error in any of the matters specified.

Judgment affirmed.

STANFORD, PHELPS, DE CONCINI and LA PRADE, JJ., concur.