403 P.2d 925

**The STATE of Arizona, Appellee,**

**v.**

**Edward MANGRUM, Appellant.**

**No. 1500.**

Supreme Court of Arizona.

In Division.

June 30, 1965.

**280**

Darrell F. Smith, Atty. Gen., Robert W. Pickrell, former Atty. Gen., Norman E. Green, Pima County Atty., John R. Neubauer, Deputy Pima County Atty., Carl Waag, Deputy Pima County Atty., for appellee.

Bernard I. Rabinovitz, Tucson, for appellant.

McFARLAND, Justice.

Appellant, hereinafter referred to as defendant, was convicted and sentenced to a term of not less than fifteen nor more than eighteen years in the Arizona State Prison

for the unlawful sale of narcotic drug (heroin), in violation of A.R.S. § 36–1002.-02, as amended. From the conviction and sentence he appeals. Defendant was previously tried on the 10th day of February 1964, and convicted, but a new trial was granted by the Honorable Raul H. Castro.

Testimony in the case showed that Henry Lugo, Jr., an informer in the employ of the Department of Liquor Licenses and Control, testified that on the 6th day of November 1963 he was standing on the sidewalk in Tucson in the 500 block of South Convent when he had a conversation with defendant who was a passenger in an automobile driven by one Duke Robinson Shaw. In the conversation Shaw and defendant indicated they had some heroin to sell. Lugo told them he did not have any money, but would try to get some and meet them later. The three were observed by Leonard Hymer, an agent for the Department of Liquor Licenses and Control.

Immediately after the conversation Lugo proceeded to the office of the Department in the State Office Building at Tucson, at which time his person and clothing were searched by Edmund C. Cleveland, another agent of the Department, Hymer, and Sergeant William Dunn of the Tucson Police Department.

After the search in the office, Lugo was given five dollars by Cleveland. They then went to the parking lot, and searched Lugo's car. Lugo got into his automobile, and was followed by Cleveland in his car accompanied by his son Ben who had also been present at the time of the search, and by Hymer and Dunn in Hymer's car. Lugo proceeded to the 500 block of South Convent Avenue. He was at all times under the observation of Cleveland. Hymer and Dunn followed, lost sight of him for a short time, but drove up at the time he stopped. A short time later, Shaw and defendant Mangrum, in a black automobile, came west on 17th Street, and went north on Convent, and stopped across the street from Lugo's car. Lugo went over to the passenger's side of the automobile, handed Mangrum the five dollars, and received a small paper from Mangrum. The agents watched what happened through binoculars and observed Lugo lean over in the car, then go back to his own car. He was followed by Cleveland, Hymer and Dunn back to the state office building, where he gave Cleveland the paper which he had received from Mangrum. Its contents were tested and found to be heroin. Defendant denied being in the 500 block of South Convent the second time when Lugo testified he made the purchase. Defendant testified that the first conversation at 502 South Convent did not concern the purchase of narcotics, but rather was regarding Lugo's efforts to dispose of a stolen typewriter. This testimony was corroborated by Duke Shaw, whose deposition of an earlier trial

of defendant was read, he being out of the jurisdiction of the court at the time of this trial.

Defendant first contends that the court erred in not permitting his counsel to interrogate the witness, Henry Lugo, Jr., concerning a conversation he had with a Phoenix attorney. Lugo had admitted that he had been convicted of a felony—grand theft—in 1962; that he had used narcotics from September 1963 to November 1963; and that he was on probation at the time of the trial. It also appeared that he had been an informer for the state in other cases. In answer to a question, Lugo stated that he knew Ted Matz, the attorney in Phoenix, very well—that in the latter part of 1962 he had a conversation with him. He then admitted the conversation was concerning a client of Matz against whom he had testified in a criminal case. Defense counsel then asked Lugo:

"Q Did you not, in fact, state in this conversation that—

"MR. NEUBAUER: Your Honor—

"Q—you had framed his client?

"MR. NEUBAUER: I object to his question where he is going into the contents of a conversation which is quite obviously hearsay."

Then, in the absence of the jury, the court asked defense counsel what was involved, and counsel replied as follows:

"MR. RABINOVITZ: This is a foundation, Your Honor, that I am laying for a witness for the defendant to be used as impeachment testimony concerning a conversation that he had with this witness, and it is going to the credibility of this witness to testify in this proceeding.

"Now, the testimony of Mr. Matz, who is a Phoenix attorney, will indicate to the Court that this witness told him that he had framed Mr. Matz's client in an earlier case. This goes to the credibility of the witness, the bias and prejudice, and I will present Mr. Matz to testify. This is why I am asking this question of this witness now.

"THE COURT: What is your viewpoint on this, Mr. Neubauer?

"MR. NEUBAUER: What was the motive? You said the credibility?

"MR. RABINOVITZ: The credibility of the witness in this trial as to whether he can be believed by the jury.

"MR. NEUBAUER: That is what you propose by—

"MR. RABINOVITZ: Pardon?

"MR. NEUBAUER: The purpose of your question to Mr. Lugo is to impeach him, is that correct, to give him a warning question?

"MR. RABINOVITZ: That is the purpose of this question here.

"MR. NEUBAUER: And to show what further point?

"MR. RABINOVITZ: Well, because I intended to show by Mr. Matz's testimony that it will impeach this witness.

"THE COURT: To show that at some other time—under oath, is it?

"MR. RABINOVITZ: Yes.

"THE COURT: You are going to show a falsehood at some other time under oath?

"MR. RABINOVITZ: Yes.

"THE COURT: It will reflect on his credibility in this case?

"MR. RABINOVITZ: Yes.

"THE COURT: Using the occasion of a falsehood, he told a lie once before in a particular case, so, he may tell one in this case; that is the substance of it?

"MR. RABINOVITZ: Yes."

Then, after the witness had stated that he had testified in the other case, the following colloquy:

"THE COURT: Let the record show in Chambers Counsel for the State and the Defendant present. As I understand you intend to show that there was some conversation in the attorney's office in Phoenix to the effect that the witness had given false testimony, is that it?

"MR. RABINOVITZ: Yes.

"THE COURT: Concerning the attorney's client in a narcotics case?

"MR. RABINOVITZ: Yes.

"THE COURT: That is the purpose of your question?

"MR. RABINOVITZ: Yes.

"THE COURT: And the facts have no connection with this case? It is merely to reflect upon this witness's credibility, is that correct?

"MR. RABINOVITZ: Yes.

"THE COURT: The record may show that the Court will sustain the objection. The feeling of the Court is that the testimony is not competent and that the only proper way to impeach the witness as to his credibility would be his general reputation for that trait of character or by agreement that it is impeachment as to the facts of this particular case. Any further offer of proof you want to make on it?

"MR. RABINOVITZ: Well, would you like me to give my argument?

"THE COURT: It will be fully in the record. You will have your position fully set forth.

"MR. RABINOVITZ: My position is that the evidence of a prior inconsistent statement by the witness is admissible, and that in order to introduce

evidence of a prior inconsistent statement, it is necessary to lay a foundation by asking a warning question, which I in effect attempted to do by inquiring as to the conversation between Mr. Lugo and Mr. Matz in Phoenix.

"If Mr. Matz were allowed to testify he would state that Mr. Lugo, in his office in Phoenix, admitted to him that he had testified falsely at a prior criminal trial against Mr. Matz's client and was boastful of the fact that he had framed him. It is my position, based on the prior cases in which Mr. Lugo had testified, he will deny having made this statement, and that the evidence of Mr. Matz would be proper impeachment amounting to evidence of a prior inconsistent statement."

■ Defendant contends that he should have been allowed to impeach Lugo by the testimony of Matz to the effect that he had committed perjury in another case, it being admitted that the other case had no connection with the instant case. In State v. Harris, 73 Ariz. 138, 238 P.2d 957, we said:

"In the majority of jurisdictions only veracity character is admissible to impeach a witness and evidence of bad general character not affecting veracity is inadmissible. 3 Wigmore Evidence 447, 450, §§ 922 and 923 (3d ed. 1940). The majority of courts will allow on the cross-examination of the witness, specific acts of misconduct not sustained by a conviction to be shown which affect veracity. 3 Wigmore Evidence 550, § 983 (3d ed. 1940). But this court has allied Arizona with the minority of states by holding that on cross-examination specific acts of misconduct cannot be shown unless the witness has been convicted of that crime. In other words a mere accusation of a felonious crime is not admissible unless there has been a conviction. (Cases cited.)

"This was an attempt on the part of the defendant to impeach Walter Ong on a mere accusation of crime. This is clearly inadmissible under the Arizona rule stated above. The reason given by the courts for this limitation is that this is a collateral matter and if allowed it would be time-consuming and a confusion of the issues. Another good reason is the protection of the witness. He should not be expected to come prepared to defend every incident of his past life but only to meet those felonious acts of which he has been convicted. If a witness knew that he would have all his alleged misdeeds made public and be open to false accusations as to others, from which he would not be permitted to defend or explain, he would dread

the witness box and be reluctant to appear and give testimony freely.

"Furthermore if the defendant had been allowed to cross-examine Ong on these alleged misdeeds and Ong had denied them, his answers would have been conclusive as this was collateral matter and the court would not allow the defendant to consume its time to contradict him. 3 Wigmore Evidence 661, § 1005(a), (3d ed. 1940)." 73 Ariz. at 142, 238 P.2d at 959.

It is clear under the Harris case, supra, the general rule is that you cannot impeach upon a collateral matter. In State v. Little, 87 Ariz. 295, 350 P.2d 756, 86 A.L.R. 2d 1120, this court recognized an exception to the rule prohibiting impeachment upon a collateral matter on the ground of motive. The question in that case was whether defendant should have been permitted to ask the chief prosecuting witness, who allegedly purchased narcotics from defendant, whether he was living in notorious cohabitation (in violation of A.R.S. § 13–222), and the fact that officials knew of it and were doing nothing about it induced him to testify in favor of the state. We held:

"Evidence offered to impeach the credibility of a witness by showing that he has a motive to testify on behalf of the State or against the defendant is generally admissible as proper cross-examination whether such evidence also tends to prove that the witness has committed acts in violation of the law." 87 Ariz. at 300, 350 P.2d at 759.

The evidence in the instant case shows that Lugo was paid a bonus for informing in various cases. However, defendant, in presenting his case to the court, does not base it upon the grounds that it showed Lugo was motivated to give false testimony in the other case because of such an arrangement. This court would have to assume such to be a fact. It could have been for other reasons. So the question is whether he was entitled to ask the question if it was collateral to the issue in the instant case. If so, he was not entitled to call Matz as a witness to refute the answer.

We have held that great latitude is permitted in cross-examination. State v. Little, supra; State v. Torres (No. 1304), 97 Ariz. 364, 400 P.2d 843 (April 7, 1965); State v. Burruell (No. 1494), 98 Ariz. 37, 401 P.2d 733 (May 5, 1965). We therefore are of the opinion that Lugo should have been permitted to answer the question. However, to permit rebuttal testimony in regard to his answers by evidence of another offense, the foundation showing motive must be established in connection with the instant case. If it is on a collateral matter to the issues of the case he is bound by the answer. The rule is

set forth in Underhill on Criminal Evidence, 5th Ed., vol. 1, § 239, p. 582:

> "Contradiction of irrelevant matters not permissible—Proof of confirmatory statements.—The rules above discussed, regulating the introduction of inconsistent declarations for the purpose of contradicting a witness, permit him to be contradicted as regards matters relevant only to the guilt or innocence of the prisoner, and not collateral or irrelevant matters. Where the witness is confronted with contradictory or inconsistent declarations made out of court and pertaining solely to irrelevant matters, and he denies that he is their author, his replies are conclusive. He cannot be contradicted on that point by the party seeking to impeach him." 1 Crim.Evid. at 582.

This is also the rule in Arizona. State v. Harris, supra; Udall's Law of Evidence, p. 88, § 63. However, the refusal of the court to permit the question to be answered is not error for the reason that defense attorney stated to the court that Lugo's answer would be in the negative, and his sole purpose of asking the question was to lay a foundation for calling Mr. Matz to impeach him. If this testimony was collateral to the main issue defendant was bound by the answer and would not be permitted to call Matz to refute it. This is the question that was presented to the trial court; hence, the failing to permit the question to be answered could not have prejudiced defendant because defendant's offer was predicated upon the fact that Lugo's answer would be in the negative, and the answer would not have helped defendant. The trial court did not permit Lugo to answer the question because in its opinion he was not entitled to bring Matz to testify to refute the answer. As appears in the evidence, the court stated to the defense attorney "Using the occasion of a falsehood, he [Lugo] told a lie once before in a particular case, so, he may tell one in this case; that is the substance of it?", to which counsel answered "Yes."

■ Contradiction on irrelevant collateral matters is not permissible. The test as to whether testimony offered in contradiction is admissible is would it be admissible for some purpose other than the mere contradiction, or would the evidence of the fact stated in prior inconsistent statements be admissible. Underhill on Evidence, 5th ed., vol. 1, 1965 Supp. § 169. Wigmore on Evidence, 3d ed., vol. 3, § 1003, p. 657.

■ Counsel admitted that the facts had no connection with those in the instant case, and that it was merely to reflect upon this witness's credibility. It is clear by this rule that the grounds of admissibility as stated by defense counsel to the court show the evidence would have been collateral to the main issue. Matz's testimony was col-

lateral; therefore, its denial by the court was not prejudicial error.

Defendant contends that the court construed his prior conviction of crime in 1954 in the State of California to be a felony, and he was prejudiced thereby in that he was forced to admit an additional conviction, and the interests of defendant were further prejudiced by requiring him to explain what was meant by the circumstances behind the conviction which he termed as "bunco sale." We do not agree with the contention of defendant that he was thereby forced to admit an additional conviction. The evidence shows that defendant sought to take what has been termed the "sting" out of his prior convictions by bringing them out himself on direct examination. He had stated on direct examination that he had been convicted in 1956 in Oakland, California, and sentenced from two to ten years for possession of narcotics and that he was a narcotics addict at that time. He also admitted he had been convicted and sentenced from two to three years in 1948, in Tucson, upon revocation of probation for "strong-arm robbery." He also testified that he pleaded guilty to both charges. During cross-examination, the deputy county attorney asked to take some matters up in the absence of the jury, at which time he told the court he had a certified copy from the State of California on defendant's felony convictions. On one of the convictions certified to, it stated a felony and sentence of from six to twelve years. Defendant then stated that he was given ten months in jail and three years probation. The court, after argument of counsel, as to whether the conviction was for a felony or a misdemeanor, stated, "Well, this is a certified copy, and I will be prepared to admit it unless you give me some authority to the contrary." The deputy county attorney evidently decided not to inject this question of error into the record, and asked no further questions in regard to the same in his direct examination. Defense counsel, on redirect examination, asked the question:

"Mr. Mangrum, when I asked you yesterday whether or not you had been convicted of any felonies and you told me I—you didn't mention a conviction back in 1954, on my advice, is that correct?"

Defendant answered "Yes, sir."

Then the following questions and answers appear in the record:

"Q Now that we have determined that this was a felony conviction, I will ask you if you were convicted in 1954 of a crime?

"A Yes, sir.

"Q What is the name of this crime?

"A Bunco sales, I pleaded guilty.

"Q Where did this take place?

"A Oakland, California, Alameda County.

"Q This was in 1954?

"A Yes, sir."

 It will be noted defense counsel stated in his question "Now that we have determined that this was a felony conviction, * * *." The counsel did not state that the court had determined it. He said that "we" had determined it. The court had not made a final determination. The court had merely indicated what its ruling would be if counsel did not show authority to the contrary. Counsel for defense brought out the testimony and in doing so inferred that he had participated in the determination that it was a felony. The deputy county attorney finished his cross examination, and did not ask any questions concerning this conviction. If defense counsel had not presented this matter on redirect it would not have been proper recross examination. He cannot now complain that the court erred in admitting evidence he himself offered. We have held that only offenses which are felonies in the state in which they are committed are admitted for impeachment. State v. Morales (No. 1432, 98 Ariz. 169, 402 P.2d 998 (June 9, 1965). However, under these circumstances, in the instant case, where the testimony was brought out by defendant himself, there is no prejudicial error. The certified judgment was not made a part of the record, and we are unable to pass upon its admissibility from the oral testimony.

 Defendant next contends that the court erred in failing to grant his motion for arrest of judgment on the ground and for the reason that the foreman of the jury stated in the presence of counsel that the jury did not believe the evidence brought out by the witness Lugo, but rather sustained its verdict on the making of inconsistent statements by defendant. This assignment of error is based upon the statements of a juror not supported by affidavit. This would have been clearly an attempt of a jury to impeach its verdict. We have held in many cases that this cannot be done. State v. Silvas, 91 Ariz. 386, 372 P.2d 718; State v. Murphy, 79 Ariz. 161, 285 P.2d 614; State v. Pollock, 57 Ariz. 415, 114 P.2d 249. However, under this assignment defendant also argues that there was not sufficient evidence on the part of the state to prove the defendant guilty beyond a reasonable doubt. As pointed out in the state's brief "It cannot be denied that Lugo was somewhat less than an ideal witness." The objection to Lugo's testimony only goes to its credibility. The facts were submitted to the jury. The jury had the opportunity of observing both the witnesses for the state and defendant, and after consideration of the testimony of both returned a verdict of guilty.

■ As we have consistently held in reviewing the sufficiency of the evidence to support a verdict, it must be viewed in the light most favorable to the state, and that all reasonable inferences be resolved against defendant. State v. Moraga (No. 1495), 98 Ariz. 195, 403 P.2d 289 (June 17, 1965); State v. Chavez (No. 1510), 98 Ariz. 236, 403 P.2d 545 (June 24, 1965). The evidence was sufficient to support the verdict.

■ The next assignment of error was the court's refusal to grant defendant's motion for mistrial upon the ground that a witness for the state had a conversation with a juror during a recess of the trial. The court heard the evidence on this matter in the absence of the jury. The witness Cleveland stated that he did not even know the man to whom he spoke was a juror—that he had merely asked him if he had found a place to put his cigar, and he told him to put it on top of the trophy case. This testimony was corroborated by another witness, Foster Temple, who stated that the juror in question had a cigar—that he had told the juror to put his cigar on the corner of a little ledge—that Cleveland then said "Yes, put it on the corner of the ledge." That was all that was said. The court then denied the motion for a mistrial. The court has large discretion in the conduct of a trial. We find no error in the exercise of discretion in the court's denying the motion for mistrial.

■ Defendant, in a memorandum not contained in his opening brief, contends he was denied his constitutional right to counsel at his preliminary hearing, and was prejudiced thereby. We have previously passed upon this question. Unless defendant's position has been prejudiced, his failure to be assigned counsel at a preliminary hearing is not considered a denial of his rights under the 6th Amendment. State v. Gortarez (No. 1440), 98 Ariz. 160, 402 P.2d 992 (June 10, 1965); State v. Schumacher (No. 1430), 97 Ariz. 354, 400 P.2d 584 (April 1, 1965). In the instant case, defendant has failed to show that his rights were prejudiced by not having counsel at the preliminary hearing; hence, this assignment of error is not well founded.

Judgment affirmed.

UDALL and BERNSTEIN, JJ., concurring.