442 P.2d 83

**STATE of Arizona, Appellee,**

**v.**

**Alex GORTAREZ, Appellant.**

**No. 1794.**

Supreme Court of Arizona,

In Banc.

June 19, 1968.

Darrell F. Smith, Atty. Gen., by T. M. Pierce, Asst. Atty. Gen., Robert K. Corbin, ·Maricopa County Atty., by N. Warner Lee, ·Deputy County Atty., for appellee.

Vernon B. ˙Croaff, Public Defender, Phoenix, by Grant Laney and Daniel D. Holley, Deputy Public Defenders, for appellant.

UDALL, Vice Chief Justice:

This is an appeal by the defendant-appellant from judgments of conviction and sentences for three counts of robbery and two counts of kidnapping, and from the court's order denying defendant's motion for a new trial.

An information was filed in the Superior Court of Maricopa County, Arizona, on March 16, 1966, charging the defendant with the crimes of robbery, Counts I, II, and III; and with kidnapping, Counts IV and V. The trial of the cause began on ˙February 7, 1967 and on the following day the defendant was found guilty on each of the Counts by the Jury, as charged in the information.

Defendant was sentenced to the State Penitentiary at Florence, Arizona for not less than eight nor more than ten years on each of the three counts of robbery, all of which were to run concurrently. In addition it was ordered that defendant be confined to the State Penitentiary for a period of not less than one nor more than five years on each count of kidnapping.

The facts and circumstances connected with the commission of the alleged crimes were substantially as follows: On December 4, 1965, defendant and his accomplice broke into the residence of Gloria June McCarthy, located at 228 N. 14th Street in Phoenix, Arizona, and took her wedding ring and two or more small coins from her person. On the same date, in the vicinity of 1224 E. Hubbell, Phoenix, Arizona, the defendant kidnapped and robbed Kenneth D. Carpenter and Larry David Lee.

The first three questions raised by the defendant upon which he bases his allegations of error will be treated together. First, it is claimed that the robbery victim, Mrs. McCarthy, by reason of an insufficient amount of lighting at the time of the alleged robbery could not have made a valid

identification of the defendant; second, the arrest of appellant was illegal and the items obtained by an incidental search, as well as the testimony concerning the same, were inadmissible at the trial; and third, the "in court" identification of the defendant was based upon a lineup identification which the defendant alleges was improperly conducted.

■ In reference to defendant's first contention the victim testified that she could see the defendant and his accomplice when they were on the outside of her house; that the light from the streetlights enabled her to clearly distinguish the appearance of the two men on the outside and later to identify them after they had broken into the house, when most of the lights inside were turned off. She testified as follows:

Q "Outside of those two lights there was no other lights?

A "Well, as I said, outside on the corner there was a street light in front of the house and the light came right through the window and went right on his face. And beside that, you are getting adjusted to the darkness. I was in there for a little while, and a little light, you can see quite a lot.

Q "Excuse me? I am sorry.

A "As you get used to the darkness, there was a little light, and you can see.

Q "So that there was total darkness?

A "No, it's not total darkness. As I said, there was this light outside on the corner, the street light, there was not total darkness, because of the street light, sir.

      *     *     *  .  *     *     *

Q "I am not asking you that. I am just asking that on your direct examination when you said it was total darkness, if it, really wasn't total darkness—

A "No, it wasn't total darkness because I can see from the street light. It was—there was some light—·

Q "Then your testimony on direct examination was incorrect?

A "It wasn't exactly—You see, there was this light coming in from the street—and I am only here to tell the truth, the whole truth.—"

The evidence also showed that one of defendant's hands was cut when he came into the house through the Arcadia door, and that as he took hold of the purse of the complaining witness blood was smeared on her clothing and person as he held her closely and tried to frighten her into giving him more money.

■ The second claim involves the alleged kidnapping charges. Defendant contends that the arrest and search were illegal and that the personal property found pursuant to the search of his person was inadmissible at the trial. The testimony shows that the arresting officers received a call on the police radio concerning a man with a gun in front of a residence at 1711 E. Warner. The radio call described a light colored automobile which the officers first encountered while proceeding to that address. The car they observed fit the description and they followed it to the address from which the complaint had originated. As a result of the description of the car, and as a result of the conversation which the officers had with the resident at 1711 E. Warner, the officers approached the car in which two robbery and kidnap victims, Carpenter and Lee, were seated. As the officers approached, Carpenter and Lee emerged from the automobile and started talking to officer Routh. As a result of the conversation between the kidnapped victims and the officer the defendant was arrested. Thereafter a search of his person disclosed that Mrs. McCarthy's ring and the two coins taken from her were in his possession. The officers also found in his possession two watches, two wallets and other items belonging to Carpenter and Lee.

The two kidnapped victims testified that shortly before midnight they were at 1224 E. Hubbell Street when they were accost-

ed by two men, and at gunpoint were taken for a ride in their own car. The defendant and his accomplice took the personal watches and other items from the two victims and forced them to drive around in the immediate neighborhood. The officers approached the car and apprehended the defendant.

The arresting officer testified that on the basis of the conversation he had with Lee and Carpenter he arrested the defendant upon the reasonable belief that he had kidnapped the two young men.

■ The third contention is not borne out by the facts. Defendant argues that his identification by the robbery victim in the police lineup was illegal and inadmissible in court. The testimony shows that of the six prisoners who were brought into the identification room, two were Mexicans and four were Caucasians. One of the Mexicans was rather tall and the other about 5'4". Defense counsel contended that by the process of elimination the victim could readily identify the shorter of the two Mexicans as the person who committed the robbery. The victim testified in this connection as follows:

Q "And so then by a process of elimination, all we have left is the last two men who are of mexican descent; is that correct?

A "Yes.

Q "And so then by a process of elimination we come down to Mr. Gortarez; is that correct?

A "Well, I knew what he looked like.

Q "Is that correct?

A "You mean I was strictly going on the fact that—

Q "No; by process of elimination.

A "No, I didn't go by a process of elimination."

The victim's testimony further shows that immediately after the defendant had broken into the house he grabbed her by the hands, threw her onto the couch and then knelt down in front of her and put his hands on her face in a threatening man-

ner. He ordered her to go to the bedroom and get her purse and closely followed as she carried out his orders. When she emptied the contents of the purse onto the couch in the living room there was enough light for defendant to sort out the coins. Defendant was able to spot the wedding ring on the victim's finger and remove it. The victim testified that the light came through the window and shined on the defendant's face. Her opportunity therefore, to identify the defendant, was quite conclusive without any reference to the police lineup.

The defendant further contended that the lineup procedure followed in this case violated the rules laid down by the Supreme Court of the United States, in United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149, and Gilbert v. State of California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178, wherein it was held the accused were denied their constitutional rights by not having counsel present at the time of the police lineup.

■ In both Wade and Gilbert the Supreme Court did not make clear what the retroactive effect would be. However, the Supreme Court has ruled in Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199, that they do not have retroactive effect, and has held that the rule requiring exclusion of identification evidence tainted by exhibiting the accused to identifying witnesses in the absence of counsel affects only confrontations conducted after June 12, 1967.

In the instant case the trial was commenced on February 7, 1967 and the sentences were pronounced by the Court on the 1st day of March, 1967. Therefore, Wade and Gilbert do not apply retroactively in this case. See, Linkletter v. Walker, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601; Tehan v. U. S. ex rel. Shott, 382 U.S. 406, 86 S.Ct. 459, 15 L.Ed.2d 453; Johnson v. State of New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882.

■ The law is well-settled that the question of the manner in which the iden-

tification is made generally relates to the weight and sufficiency of the evidence and not to admissibility. People v. Branch, 127 Cal.App.2d 438, 274 P.2d 31 (Cal.1954); 22A C.J.S. Criminal Law § 616 at 429.

Further proof that the defendant was the person who committed the first robbery at the home of Mrs. McCarthy is found in the fact that her wedding ring was in the possession of defendant at the time of his arrest. Furthermore, there was a cut or an abrasion on the defendant's left hand at the time he was taken to jail, substantiating the testimony of Mrs. McCarthy that the defendant cut his hand when he entered her house through the Arcadia door and that blood from the wound was smeared on her clothing and person.

It is clear from the evidence that reasonable grounds did exist for the arrest of the defendant at the time the two kidnapped victims were freed from the custody imposed upon them by defendant. It was established beyond question that defendant was the person who robbed Mrs. McCarthy at her home. The identity was established by her personally and corroborated by circumstantial evidence.

■ The fourth assignment of error is without merit. It is alleged that the sentences pronounced by the court are so ambiguous that it is impossible to determine the terms of imprisonment. The sentences that were pronounced by the court on the 1st day of March, 1967, read as follows:

"IT IS THE ORDER of this Court that you be confined in the State Penitentiary at Florence, as prescribed by law for a period of not less than Eight (8) nor more than Ten (10) years on each of the three counts of Robbery, all of which shall run concurrently, and in addition, you shall be confined in the State Penitentiary at Florence, as prescribed by law, or at such other place or places as the laws may determine, for a period of not less than one (1) nor more than Five (5) years on each of the counts of Kidnapping, each of said counts and sentences thereon to be served concurrently and consecutively to the sentences pronounced on the Robbery charges first enumerated, and sentence shall commence to run from this date, and all of which shall run concurrently with other sentence now being served.

" \* \* \*"

A careful reading of the sentences shows that the Court intended that defendant's robbery sentences would be served concurrently beginning on the 1st day of March 1967; that the kidnapping sentences would be served concurrently with each other and consecutively to the sentences pronounced on the robbery charges first enumerated. See, State v. Owen, 2 Ariz.App. 580, 410 P.2d 698 (1966).

■ Defendant finally contends that the court should have directed a mistrial when it was called to the court's attention that the complaining witness, Mrs. McCarthy, was conversing with persons within the presence and hearing of the members of the jury. It is not claimed that the witness was talking to any of the jurors nor does the defendant purport to relate anything that was said in the hearing of the jurors.

The Court, after a hearing in chambers, denied the motion for a mistrial. The record is silent as to what the complaining witness is alleged to have said; nor is there evidence that any of the jurors heard anything that she said. Thus, there is no showing of any prejudicial communication or conduct on the part of the witness. We do not condone the conduct of the witness in conversing with another in the presence of the jury but the conduct does not constitute reversible error unless prejudice is actually shown. State v. Johnson, 97 Ariz. 27, 396 P.2d 392 (1964), and see State v. Mangrum, 98 Ariz. 279, 403 P.2d 925 (1965).

For the reasons above stated the judgment of the trial court is affirmed.

McFARLAND, C. J., and STRUCK-MEYER, BERNSTEIN and LOCKWOOD, JJ., concur.