451 P.2d 648

The STATE of Arizona, Appellee,

·v.

Milford TAYLOR, Appellant.

No. 2 CA–CR 133.

Court of Appeals of Arizona.

March 13, 1969.

Rehearing Denied April 11, 1969.

Review Denied April 29, 1969.

Gary K. Nelson, Atty. Gen., Carl Waag, Sp. Asst. Atty. Gen., Lloyd D. Brumage, County Atty., Pinal County, Florence, Patricia Moring, Deputy County Atty., Pinal County, Florence, for appellee.

Cavness, DeRose, Senner & Foster, by John W. Rood, Phoenix, for appellant.

MOLLOY, Chief Judge.

This is an appeal from a conviction of assault with a deadly weapon. The charge

arose from the defendant's shooting of a 15-year-old boy. We are concerned principally with whether the trial court unduly restricted cross-examination of prosecution witnesses.

The shooting occurred on premises occupied by the defendant as his home. There are no witnesses to the shooting except the defendant and the complaining witness and their stories of what occurred are sharply conflicting.

The youth who was shot testified that he went to the defendant's home on the evening in question to collect for newspapers which he had delivered some months before the shooting. On arrival, he rang the front doorbell several times, but, receiving no response, proceeded to knock on the back door. Again there was no response; he peeked through the window without seeing "anything." Then, according to the boy, he heard the defendant say, "If you want the money, come on in." He checked the back door and found it locked. Thereupon the boy " * * * took it as a dare" to come into the house. He knocked the screen out of one of the back windows with his fist. He hid the screen in a bush some 200 feet or more from the back door so that the defendant " * * wouldn't make anything of it." Though the steelsash on this window was found by sheriff's deputies to have been forced open, the complaining witness testified that when he returned to the house, he found the back door open and he entered through this door into the kitchen. There he encountered the defendant running out of the other room with a pistol in each hand. According to the boy, the defendant called him a foul name, kicked him and hit him on the head with his pistol. The boy then ran out the back door and climbed over the backyard fence when he heard the defendant order him to stop, which he did. The defendant approached and told him that he was going to take him to the police station, but then, for no apparent reason, while the boy had his arms up—ready to go to the station—the defendant shot him in the

groin. At this time, the boy turned and escaped by running.

The defendant's testimony was that he had been deer hunting on that morning, and after spending some time in a tavern in the late afternoon, returned to his home where he lived alone. He fell asleep in the living room while watching TV. Two pistols, which he had used while hunting, were laying beside him. He was awakened by strange noises in the kitchen; he grabbed the two guns, one in each hand, and, " * * * half afraid or scared because I didn't know who or what was happening * * *," proceeded to the darkened kitchen. There he encountered a figure whom he later ascertained to be the complaining witness. When the defendant told this figure to stay where he was, that he was going to call the police, the figure stepped toward him and he hit the figure on the head with his pistol. Again, the defendant told the figure to stand still while he made a telephone call, but the individual ran out the back door. The defendant proceeded after this person and after firing two warning shots, the defendant fired one or two more shots in the general direction of the fleeing person as he vaulted over the back fence.

■ The first contention of error is that the defendant was unduly restricted in his cross-examination of the complaining witness. By a pretrial ruling, on a motion to suppress evidence, the trial court ruled that this witness could not be cross-examined as to any " * * * prior acts of misconduct * * *" Defendant's counsel avowed to the court that it was his understanding that this witness had on two prior occasions been charged in juvenile proceedings with breaking and entering. Defendant contended that the cross-examination on these prior offenses should be permitted in order to disparage the " * * * pure motive * * *" put forward by the complaining witness as to why he was in the defendant's home on the evening in question. Argument to the court indicated that defendant's counsel wanted to question the witness about his *modus operandi* in making this and other

illegal entries. The pretrial rulings of the court expressly foreclosed any such examination.[1]

■ As in most evidentiary questions, there is considerable discretion vested in the trial court as to the limits of cross-examination. State v. Baca, 102 Ariz. 83, 86, 425 P.2d 108, 111 (1967). However, this jurisdiction is committed to "great latitude" in scope of cross-examination. State v. Mangrum, 98 Ariz. 279, 285, 403 P.2d 925, 929 (1965). The right with which we are concerned is constitutionally protected. Pointer v. State of Texas, 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965); State v. Narten, 99 Ariz. 116, 121, 407 P.2d 81, 84 (1965). Our Supreme Court has said:

> "On cross-examination a party should be permitted to ask any question which bears upon the credibility of the witness and sheds light upon the issues of the case." Spector v. Spector, 94 Ariz. 175, 184, 382 P.2d 659, 665 (1963).

■ One of the critical issues of this case was whether the complaining witness was in the commission of a felony when apprehended by the defendant. The jury was instructed, and there is no questioning of this law here, that, if the complaining witness was in the process of committing a burglary, the defendant would have been justified in using such force as was reasonably necessary for the apprehension of the offender, even to the taking of life. *See* Viliborghi v. State of Arizona, 45 Ariz. 275, 291, 43 P.2d 210, 217 (1935); A.R.S. §§ 13–246(A) and 13–462; and *see* 6 C.J.S. Arrest § 13, at p. 613; and Life & Casualty Ins. Co. v. Hargraves, 169 Tenn. 388, 88 S.W.2d 451 (1935).

Conversely, if the complaining witness were an invitee into the defendant's home on the occasion in question, the defendant would have no right to apprehend him. The fact that the defendant did shoot this boy is established beyond cavil and the only realistic defense presented is that the defendant was justified in so doing because of the law pertaining to arrest.

With this the factual issue, the relevancy of the prohibited cross-examination is clear. Any fact finder interested in objectively testing the truth of the complaining witness's version of these occurrences would be interested in knowing whether this boy had previously entered homes in the fashion which the defendant's testimony and some of the physical evidence would indicate was the case here. Such previous conduct, if it occurred, would be strong circumstantial evidence bearing upon what was in this boy's mind when he gained entrance to this home.

■ In evaluating whether instances of prior misconduct should be admitted, either as a permissible area of cross-examination or for purposes of introducing independent evidence, the court must weigh competing interests. State v. Chaney, 5 Ariz.App. 530, 538, 428 P.2d 1004, 1012 (1967); and *see* McCormick on Evidence, at 319–321 (Hornbook Series 1954).

One of the prime considerations to be taken into account—possible prejudice against the defendant to a criminal charge—is not present here. We have remaining two policy considerations to compete against the ascertainment of truth. One is the matter of time consumption and confusion of issues. *See* State v. Harris, 73 Ariz. 138, 142, 238 P.2d 957, 959 (1951). In view of the direct bearing that this examination would have upon a critical factual issue and the difficulty of obtaining any better proof of the elusive *factum probandum*—that is, state of mind of the complaining witness—this competing consideration does not weigh heavily.

■ The other competing consideration is the discouragement to witnesses that might result from permitting past misdeeds to be made public. *See* State v. Harris, 73 Ariz. at 142, 238 P.2d at 959. When the previous misconduct is offered, only for such disparaging effect as it may have on

---

1. The court's ruling was: "You can't go into his M. O. because he's not a defendant."

the general credibility of the witness, this consideration has controlling influence. *See* State v. Harris, *supra.* But, when the misconduct bears an inferential connection with a factual issue in the case, the consideration of the discomfiture of the witness must yield to the ascertainment of the truth, at least to the extent of permitting cross-examination, State v. Mangrum, 98 Ariz. 279, 285, 403 P.2d 925, 930 (1965), and, if the inferential connection is sufficiently strong, to the extent of permitting independent evidence of the conduct. *See* State v. Chaney, 5 Ariz.App. 530, 538, 428 P.2d 1004, 1012 (1967).

We believe that this pretrial ruling suppressing cross-examination was overly restrictive, and, in view of the importance of the factual issue as to which such cross-examination was denied, that prejudicial error was committed. Hence, we answer the other assertions of error only to the extent that they present problems which may arise in a retrial of this case.

■ The defendant complains that the pretrial ruling also prohibited examination that would have revealed that the complaining witness had stolen a six pack of beer on the afternoon of the evening in question. The defendant was permitted to establish by cross-examination that the complaining witness had drunk five bottles of beer that afternoon, but was not permitted to cross-examine as to whether this beer had been "swacked." We see no error in this ruling, considering the manner of its presentation to the trial court. Though an offer of proof, as such, is not necessary in order to predicate error on the wrongful restriction of cross-examination, State v. Little, 87 Ariz. 295, 301, 350 P.2d 756, 759, 86 A.L.R.2d 1120 (1960), Tate v. Connel, 3 Ariz.App. 534, 540, 416 P.2d 213, 219 (1966), and *see* 4 C.J.S. Appeal and Error § 291 b, bb, at p. 901, nevertheless, the trial court in exercising its discretion to limit the scope of cross-examination, is entitled to reply upon what the record before him reveals to be the relevancy of the cross-examination attempted. Ruth v.

Rhodes, 66 Ariz. 129, 135, 185 P.2d 304, 308 (1947); Nelson v. Darling Shop of Birmingham, Inc., 275 Ala. 598, 157 So.2d 23, 34–35 (1963); Dollinger v. San Gabriel Lanes, 205 Cal.App.2d 705, 23 Cal.Rptr. 194, 197 (1962). The "swacking" of beer, without more, has no direct probative bearing upon any factual issue in this case. Conversely, the theft of beer is not *per se* a taboo subject for cross-examination. If there is a probative connection between any such theft and the intent of the complaining witness on the occasion of his entry into defendant's home, as, for instance, if this beer were taken after an entry using methods similar to those the defendant contends were used on this occasion, probing questions in this area would be permissible under the principles discussed above.

The defendant complains that he was not permitted to cross-examine the mother of the complaining witness as to whether a civil action was being filed against the defendant arising out of the shooting of her son by the defendant. We believe that this lies within the permissible limits of cross-examination, to show bias or a motive for prevarication on the part of the witness. State v. Little, *supra,* 87 Ariz. at 301, 350 P.2d 756; and *see* United States v. Lester, 248 F.2d 329 (2d Cir.1957)

■ The defendant complains that during the voir dire of the jury, the prosecution was permitted to ask the jurors whether they had knowledge of a public dispute as to the propriety of what the defendant did on this occasion. According to the defendant, the question had "racial undertones." We see no error in this inquiry, even if it had something to do with race. The purpose of voir dire is to ascertain facts about individual jurors that may serve as a reason either for peremptory or a cause challenge. Wilson v. Wiggins, 54 Ariz. 240, 94 P.2d 870 (1939). If there is a possibility of bias arising from knowledge of an opinion held by an ethnic group, we know of no law that would prohibit voir dire examination of jurors on this subject.

The defendant complains that the testimony of the complaining witness was so incredible that the jury should have been instructed to disregard it. We find no testimony here directly contrary to physical law. The truth of the complaining witness's testimony is properly left to the trier of fact. State v. Ballesteros, 100 Ariz. 262, 413 P.2d 739 (1966).

Judgment reversed and remanded for new trial.

HATHAWAY and KRUCKER, JJ., concur.