551 P.2d 86

**The STATE of Arizona, Appellee,**

v.

**Anthony Hedric JOHNSON, Appellant.**

**No. 1 CA–CR 1318.**

Court of Appeals of Arizona,
Division 1,
Department A.

June 29, 1976.

Rehearing Denied Aug. 18, 1976.
Review Denied Sept. 21, 1976.

Bruce E. Babbitt, Atty. Gen. of Arizona by William J. Schafer, III, Chief Counsel, Crim. Div., and Georgia Butcher Ellexson, Asst. Atty. Gen., Phoenix, for appellee.

Jeffrey S. Kaufman, Phoenix, for appellant.

## OPINION

NELSON, Judge.

After a trial by jury, Anthony Hedric Johnson (Johnson) was convicted of armed robbery with a prior conviction and sentenced to not less than 12 nor more than 16 years in the State Prison. On appeal, he raises three issues. Because we must reverse on the first issue of whether a stereo cord was proper impeachment evidence, we do not reach the other two issues raised by Johnson since they are connected to the first issue and will not recur on a retrial.

The trial court initially "suppressed" all of the evidence seized from Johnson except for money, stereo equipment, a portable television set and two guns found in his apartment. It appears that the trial court suppressed this evidence because the victim could not identify any of the other items seized. Accordingly, the State contends and we agree that the basis for the trial court's ruling was that the other items were irrelevant to the prosecutor's case-in-chief. One of the items which was suppressed was a "DIN jack and cord" (hereafter referred to as "the DIN jack") which was found in the trunk of Johnson's wife's car. A DIN jack is a piece of stereo equipment which connects a tuner to a tape deck. The DIN jack fit the stolen stereo equipment. However, it can also fit other kinds of equipment.

Johnson took the witness stand on his own behalf and denied his involvement in the crime. On cross examination, he testified as follows:

"Q Let me ask you about this yellow over white or white over yellow '70 Ford car. Had you driven this car of your wife's?

"A Yes, sir.

"Q Had you driven it that night out to the victim's place?

"A Yes, sir.

"Q You had keys for the car?

"A Yes.

"Q Had you ever loaned these keys to anyone else, to Jimmy or Sherman or Bobo?

"A Not that night.

"Q How about the next day, the 12th?

"A No, sir.

"Q The day the police came they hadn't asked you for your keys or anything like that?

"A You mean the police, or who?

"Q I mean Jimmy or Sherman or Bobo.

"A No, sir.

"Q So they didn't get your car on the day of the 12th?

"A No, sir.

"Q Let me ask you about this particular stereo unit here. Who brought that unit in?

"A I'm not sure exactly which individual brought it in, but it was one of the three.

"Q You didn't bring it in?

"A Into my house?

"Q Right.

"A No, sir.

"Q Have you ever owned a stereo unit like this?

"A No, sir.

"Q How about your wife? Has she ever owned one like this?

"A Not to the best of my knowledge.

"Q Not as long as you've known her?

"A Correct.

"Q So you would have no reason to have any accessories, reels or tapes or something for this particular stereo?

"A No, sir.

"Q Did Jimmy or Sherman or Bobo ever ask you if they could put any of this property they took in your car?

"A  They did state they wanted to take it somewhere.  I said no, they would have to wait for Bobo to come back.

"Q  So you didn't let them put any in your car?

"A  No, sir.

"Q  Did you ever put any of it in your car?

"A  No, sir.

"Q  You are positive of that?

"A  Yes, I'm positive."

To supposedly impeach this testimony, the prosecutor offered the DIN jack. There was no testimony, however, that this particular DIN jack belonged to the victim or even that a DIN jack was stolen in the crime.  Further, a police officer testified that it was "very possible" that equipment other than the type of stolen equipment could require or utilize a DIN jack.

On sur-rebuttal, Johnson testified that he owned Panasonic and Akawi (phonetic) stereo equipment.[1]  He also testified that he had placed this equipment and numerous connecting wires in the trunk of his car in order to take the equipment to be fixed.  He testified that he had various cords which attached to his stereo equipment, but could not swear that the DIN jack was or was not his cord.

The State attempts to justify the admission of the DIN jack on the ground that it "impeached" Johnson's testimony.  We will consider both this issue and whether his testimony made this evidence relevant which would otherwise have been irrelevant without his testimony.

It is well established that contradiction on irrelevant or collateral matters is not permissible.  *State v. Williams*, 111 Ariz. 511, 533 P.2d 1146 (1975).  The test as to whether contradictory testimony is admissible is simply: is it admissible for some purpose *other* than mere contradiction.

*State v. Mangrum,* 98 Ariz. 279, 403 P.2d 925 (1965); 3 *Wigmore on Evidence,* § 1003 at 657 (3d ed. 1940).

The testimony which the State contends is "impeached" by the existence of the DIN jack deals with two subjects: first, whether Johnson loaned his wife's car to the robbers; second, whether Johnson had any reason to own stereo equipment compatible with that stolen.

First, whether or not Johnson loaned his car to the robbers is clearly collateral to the basic issue of whether he was present at the robbery.  Further, the existence of a DIN jack in the trunk does not even directly contradict his testimony because there are numerous ways the DIN jack could have been placed in the trunk apart from the loaning of the car.

Second, Johnson did not testify that he did not own *any* stereo equipment, only that he had no reason to own any accessories to the type of stereo equipment that was stolen.  In fact, Johnson did not have any reason to own that equipment, but did have a reason to own accessories which might fit both his own stereo and the stereo which was stolen.  Therefore, there is no direct contradiction of his testimony and the admission of the DIN jack for impeachment purposes was error.

Further, Johnson's ownership of similar equipment is not an issue in the case.  The issue in the case was whether Johnson possessed the recently stolen property.  There was no issue as to the extent of his ownership of stereo equipment.  Accordingly, we feel impeachment on this issue was collateral and improper.

It appears that the trial court initially correctly found the DIN jack to be irrelevant absent an identification by the victim.  There was no subsequent identification of the DIN jack by the victim.  The question now is whether Johnson's testimony established sufficient facts to justify the reversal of that ruling.

1. The stolen equipment was Akai.

In making its ruling as to the use of the DIN jack in the State's rebuttal, it appears that the trial court had a mis-impression of the testimony. The court stated: "I'll assure you [Johnson] that I would not have permitted the rebuttal evidence to come in had he [the prosecutor] not laid the foundation he [Johnson] or his wife did not have stereo equipment and never had anything of this kind." As has been shown, Johnson did not affirmatively testify that he never had "anything of this kind" and, in fact, owned stereo equipment that could have included the DIN jack.

The only testimony that could establish relevancy was Johnson's negative response to the question: "So you would have no reason to have any accessories, reels or tapes or something for this particular stereo?" We do not think that the fact that Johnson possessed a piece of equipment which could have fit his stereo unit as well as the stereo unit which was stolen in the robbery contradicts this assertion. The question did not specifically focus on a DIN jack or even focus on such items as connecting wires or cords. The listing of accessories, reels or tapes could have created the impression in Johnson's mind that the prosecutor was referring to larger component parts of stereo equipment. The addition of the ambiguous "something" appears to be a legal artifice for catching Johnson in a meaningless contradiction.

The prosecutor could have had the victim identify the DIN jack or at least have introduced evidence that a DIN jack was reported stolen. However, he did not do so. Although he stated that the police officer would testify that the victim had identified the item, no competent evidence was introduced for this proposition. In fact, on the basis of the pretrial hearing, the inference is that the victim could not identify any of the items found in the trunk of Johnson's wife's car. It would seem logical that if the police had discovered a piece of stolen property in the trunk, they would have introduced it into evidence. Rather, they introduced only items which were found in his apartment. Therefore, absent a showing that the DIN jack was taken in the robbery, or that the DIN jack did not fit Johnson's equipment, we do not feel that it is relevant.

This lack of relevancy of the DIN jack distinguishes this case from *State v. Morris*, 26 Ariz.App. 342, 548 P.2d 435 (1976). In *Morris*, a rape victim testified that she had been placed in the trunk of the defendant's car. The defendant testified that the victim consented to the sexual acts and that he had not placed her in the trunk. On rebuttal, the State was permitted to introduce the brown hair found in the trunk of the car and a sample of the victim's hair. Morris contended that the testimony was irrelevant and without sufficient foundation because there was no expert testimony to connect the hair found in the trunk with the victim's hair. Division Two of this Court found the evidence to be relevant and admissible. In this case, however, there is nothing whatsoever to connect the DIN jack to the robbery, nor is there any evidence that stolen merchandise was placed in the trunk. Unlike the two hairs in *Morris*, no comparison can be made by the jury between the DIN jack found in the trunk and a piece of stolen property. In fact, in this case, the trial court ruled that the evidence was inadmissible in the prosecution's case-in-chief. Also, the presence of the hair directly contradicted defendant's version of the crime in *Morris*. The discovery of a DIN jack does not contradict Johnson's defense here. Finally, no other explanation was offered for the hair in *Morris*. In this case, Johnson had a valid explanation for the DIN jack. Therefore, *Morris* is not applicable to this case.

In conclusion, there is little doubt that the DIN cord was prejudicial to Johnson. It was introduced as a contradiction of his testimony and the inference was clearly that the DIN jack was stolen property, in spite of the fact there was absolutely no

**100**

evidence showing that a DIN jack was stolen.

At trial, Johnson testified that he did not commit the offense but that the robbers brought the stolen property to his apartment without his permission. He also testified that he was in the process of leaving for California with his wife at the time of the crime and one of the robbers was planning on moving into his apartment. Two witnesses corroborated his story. The only unexplained testimony linking Johnson to the crime was the victim's testimony and the DIN jack. Johnson suggested that the victim was either mistaken because he was under the influence of drugs or lied to gain police favor (which he allegedly sought because he sold drugs.) Accordingly, the basic issue was whether the jury believed Johnson and his witnesses or the victim. In this context, the use of the DIN jack as impeachment evidence had a devastating effect on Johnson's story. Because of the critical importance of the DIN jack, the court should have required a showing that the DIN jack was in *some* way connected with the robbery. Standing alone, it is not fair to allow the jury to infer that the DIN jack was stolen property, absent any evidence. With no evidence that the DIN jack was part of the stolen property in this case, its discovery in Johnson's wife's car has no impeachment value, and the great prejudice to Johnson is apparent. Indeed, the transcript of the proceedings on the motion for new trial reveals that the jury was so concerned about the DIN jack in the trunk that they sent out a question about it during their deliberations.

The judgment and conviction are reversed and the cause is remanded for a new trial.

DONOFRIO, P. J., an OGG, J., concur.